Michael A. YANERO and Sheri L. Yanero as Parents and Next Friends of Ryan Yanero, a Minor, Appellants,

v.

Allen DAVIS; Jeffrey Becker; Robert Stewart; Jefferson County Board of Education; Kentucky High School Athletic Association; and Ryan Coker, a Minor, Appellees.

and

Kentucky High School Athletic Association, Appellee/Cross–Appellant,

v.

Michael A. Yanero and Sheri L. Yanero as Parents and Next Friends of Ryan Yanero, a Minor, Appellants/Cross–Appellees,

and

Allen Davis; Jeffrey Becker; Robert Stewart; Jefferson County Board of Education; and Ryan Coker, a Minor, Appellees.

and

Allen Davis; Jeffrey Becker; Robert Stewart; and Jefferson County Board of Education, Appellees/Cross–Appellants,

v.

Michael A. Yanero and Sheri L. Yanero as Parents and Next Friends of Ryan Yanero, a Minor, Appellants/Cross–Appellees.

and

Kentucky High School Athletic Association, Appellee/Cross–Appellant,

and

Ryan Coker, a Minor, Appellee.

No. 1999–SC–0871–DG, 2000–SC–0347–DG, 2000–SC–0353–DG.

Supreme Court of Kentucky.

Nov. 21, 2001.

Rehearing Denied Feb. 21, 2002.

A. Thomas Johnson, Louisville, Counsel for Appellants/Cross–Appellees Michael A. Yanero and Sheri L. Yanero as Parents and Next Friends of Ryan Yanero, a Minor (1999–SC–0871–DG, 2000–SC–0347–DG and 2000–SC–0353–DG).

Steven L. Snyder, Daniel G. Brown, David A. Calhoun, Wyatt, Tarrant & Combs, Louisville, Counsel for Appellees/Cross–Appellants Allen Davis, Jeffrey Becker, Robert Stewart, Jefferson County Board of Education (1999–SC–0871–DG, 2000–SC–0347–DG and 2000–SC–0353–DG).

Danny C. Reeves, Roger G. Wright, Greenebaum, Doll & McDonald, Lexington, Counsel for Appellee/Cross–Appellant Kentucky High School Athletic Association (1999–SC–0871–DG, 2000–SC–0347–DG and 2000–SC–0353–DG).

William K. Oldham, Blackburn, Hundley & Domene, LLP, Louisville, Counsel for Appellee Ryan Coker, a Minor (1999–SC–0871–DG, 2000–SC–0347–DG and 2000–SC–0353–DG).

Mike Breen, Mike Breen Attorneys at Law, P.S.C., Bowling Green, Counsel for Amicus Curiae Kentucky Academy of Trial Attorneys (1999–SC–0871–DG).

COOPER, Justice.

Waggener High School is a public ("common") school in the Jefferson County, Kentucky, School District. It is also

one of 286 members of an unincorporated association known as the Kentucky High School Athletic Association ("KHSAA"). In addition to other interscholastic athletic teams, Waggener has both a varsity and a junior varsity baseball team. On April 17, 1997, Ryan Yanero, age fifteen, a member of the junior varsity team, was injured when struck in the head by a baseball thrown by Ryan Coker, also age fifteen and also a member of the junior varsity team. Both boys claim the injury occurred while Coker was pitching batting practice inside the school gymnasium prior to a scheduled game against another high school team. When struck, Yanero was inside the batting cage attempting to hit pitches thrown by Coker. Yanero was not wearing a batting helmet.

Yanero, by and through his parents, brought this action in the Jefferson Circuit Court against the Jefferson County Board of Education; Robert Stewart, Waggener's athletic director; Allen [1] Davis, an assistant coach assigned to coach the junior varsity baseball team; Jeffrey Becker, another assistant coach assigned to "help" with the junior varsity team; and the KHSAA. The Complaint alleged that the Board of Education, Stewart, Davis and Becker negligently failed to require Yanero to wear a batting helmet while engaged in batting practice and/or to administer or obtain appropriate medical treatment as soon as practicable after his injury; [2] that the Board of Education and the KHSAA negligently failed to develop, implement and enforce rules and regulations pertaining to the proper hiring and training of coaches and athletic directors qualified to provide for the safety of students partici-

pating in batting practice and/or in the proper medical procedures to be followed in case of a head injury; and that the Board and the KHSAA were vicariously liable for the negligence of Stewart, Davis and/or Becker. The defendants filed third-party complaints against Coker seeking indemnity and/or contribution for any sums that might be adjudged against them. At the conclusion of an extensive discovery process, the Jefferson Circuit Court granted summary judgments to all of the defendants on grounds of sovereign, governmental, or official immunity, and those dismissals mooted the third-party claims against Coker. The Court of Appeals affirmed. We granted discretionary review for the purpose of clarifying the nature and extent of immunity from tort liability applicable to governmental agencies, officers, and employees.

## I. SOVEREIGN IMMUNITY.

As recently noted in *Reyes v. Hardin Memorial Hospital,* Ky., 55 S.W.3d 337 (2001), sovereign immunity is a concept that arose from the common law of England and was embraced by our courts at an early stage in our nation's history. *Id.* at 338. It is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity. Restatement (Second) of the Law of Torts § 895B(1) (A.L.I.1979); 72 Am.Jur.2d, *States, Territories, and Dependencies,* § 99 (1974). This principle was recognized as applicable to the Commonwealth of Kentucky as early as 1828. *Divine v. Harvie,* 23 Ky. (7

---

1. The original complaint filed in this action identified Davis as "Alan Davis." Davis's Answer noted that his correct name is "Allen Davis." Both versions have been used interchangeably in the pleadings and briefs filed in this case.

2. Yanero's expert medical witness has testified by deposition that the failure to provide Yanero with immediate medical treatment did not cause or contribute to the long-term effects of his injury.

T.B. Mon.) 439, 441 (1828). The absolute immunity from suit afforded to the state also extends to public officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought. *Alden v. Maine*, 527 U.S. 706, 756, 119 S.Ct. 2240, 2267, 144 L.Ed.2d 636 (1999); 72 Am. Jur.2d, *States, Territories and Dependencies*, § 104 (1974); *e.g., Tate v. Salmon*, 79 Ky. 540, 543 (1881) (claim demanding payment of funds held in the state treasury could not be maintained under the pretext of a suit against the state treasurer[3]); *Divine v. Harvie, supra*, at 441 (state auditor and state treasurer could not be sued in substitution for the state to obtain a garnishment against the state treasury).

■ Absolute immunity also extends to legislators in the performance of their legislative functions, U.S. Const., Art. I, § 6, cl. 1 ("Speech or Debate" Clause), *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), *Wiggins v. Stuart*, Ky.App., 671 S.W.2d 262 (1984), but not otherwise, *Hutchinson v. Proxmire*, 443 U.S. 111, 125–33, 99 S.Ct. 2675, 2683–87, 61 L.Ed.2d 411 (1979); judges for all their judicial acts, *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), *Vaughn v. Webb*, Ky.App., 911 S.W.2d 273 (1995), but not otherwise, *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); and prosecutors with respect to the initiation and pursuit of prosecutions, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), *McCollum v. Garrett*, Ky., 880 S.W.2d 530, 535 (1994). The rationale for absolute immunity for the performance of legislative, judicial and prose-

cutorial functions is not to protect those individuals from liability for their own unjustifiable conduct, but to protect their offices against the deterrent effect of a threat of suit alleging improper motives where there has been no more than a mistake or a disagreement on the part of the complaining party with the decision made. Restatement (Second) Torts, *supra*, § 895D cmt. c.

■ A sitting President of the United States is afforded absolute immunity from liability predicated upon his official acts, primarily because of the uniqueness of his office and the constitutional tradition of separation of powers. *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 102 S.Ct. 2690, 2701, 73 L.Ed.2d 349 (1982). However, absolute immunity has not been extended to cabinet officials or presidential advisers, who enjoy only qualified official immunity as described in Part III of this opinion, *infra. Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Forrester v. White, supra*, the Court explained that, except with respect to immunities granted by express constitutional or statutory provisions, immunity issues are resolved by examining "the nature of the functions with which a particular official or class of officials has been lawfully entrusted," *id.* at 224, 108 S.Ct. at 542, and evaluating "the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* Absolute immunity of a government official from suit for monetary damages is justified only when the danger of the official being deflected from the effective performance of his/her public duty is great. 63C

---

**3.** In retrospect, it may have been preferable to have paid the money to the claimant, since Tate, the state treasurer, subsequently defalcated the state treasury and absconded. *See*

*generally, Commonwealth v. Tate*, 89 Ky. 587, 13 S.W. 113 (1890) and *Commonwealth v. Tate*, 89 Ky. 608, 13 S.W. 117 (1890).

Am.Jur.2d, *Public Officers and Employees*, § 308 (1997). "Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy." *Forrester v. White, supra,* at 224, 108 S.Ct. at 542.

## II. GOVERNMENTAL IMMUNITY.

 " '[G]overnmental immunity' is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency." 57 Am.Jur.2d, *Municipal, County, School and State Tort Liability,* § 10 (2001). The principle of governmental immunity from civil liability is partially grounded in the separation of powers doctrine embodied in Sections 27 and 28 of the Constitution of Kentucky. The premise is that courts should not be called upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an inadequate crucible for testing the merits of social, political or economic policy. 63C Am.Jur.2d, *Public Officers and Employees,* § 303 (1997). Put another way, "it is not a tort for government to govern." *Dalehite v. United States,* 346 U.S. 15, 57, 73 S.Ct. 956, 979, 97 L.Ed. 1427 (1953) (Jackson, J., dissenting). Thus, a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function.[4] 72 Am. Jur.2d, *States, Territories and Dependencies,* § 104 (1974).

A number of Kentucky appellate court decisions appear to have used the terms "sovereign immunity" and "governmental immunity" interchangeably. *E.g., Dunlap v. University of Kentucky,* Ky., 716 S.W.2d 219 (1986) ("The issue in this case is whether the appellant's claim was barred by proper application of the doctrine of 'sovereign immunity.' " *Id.* at 219. "We conclude that the plain, unmistakable meaning of the statute is a partial waiver of governmental immunity." *Id.* at 222.); *see also King v. Sermonis,* Ky., 481 S.W.2d 652, 655 (1972); *Carter v. Pfannenschmidt,* Ky., 467 S.W.2d 777, 778 (1971); *Cullinan v. Jefferson County,* Ky., 418 S.W.2d 407, 410 (1967). It has been asserted that the concept of governmental immunity was developed in Kentucky as a common law concept applicable only to municipalities and was separate and distinct from the sovereign immunity afforded the Commonwealth. *Louisville and Jefferson Co. Metro. Sewer Dist. v. Simpson,* Ky., 730 S.W.2d 939, 943 (1987) (Leibson, J., dissenting), *cert. denied,* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987). Thus, when municipal immunity was curtailed, if not effectively abolished, in *Haney v. City of Lexington,* Ky., 386 S.W.2d 738 (1964) and (again) in *Gas Service Co., Inc. v. City of London,* Ky., 687 S.W.2d 144 (1985), many assumed that the governmental/proprietary distinction had been abolished with it.

> At most, the distinctions seem to be contrived and without sensible basis. That which was proprietary in some states was deemed governmental in others.

*Haney, supra,* at 740; *Gas Service, supra,* at 146. In fact, the governmental/proprietary analysis had been applied to state agencies as long ago as *Gross v. Kentucky*

---

**4.** The principle discussed here should not be confused with the discretionary/ministerial function analysis that is applied in determining when a claimant can recover damages in the Board of Claims against the Commonwealth or one of its agencies for the negligent performance of a governmental function. KRS 44.073(2); *Collins v. Commonwealth, Nat. Resources and Env. Prot. Cabinet,* Ky., 10 S.W.3d 122 (1999).

*Board of Managers,* 105 Ky. 840, 49 S.W. 458 (1899).

> It is true that this board has been called, in an opinion by this court, an "agency of the state." It was an agency of the state, but it was also vested with corporate powers, and in its corporate capacity it may be sued for its corporate acts, just as any other corporation.... The board was not created to discharge any governmental function.

*Id.,* 49 S.W. at 459. From the same era is found the following in an annotation at 83 L.Ed. 794, *et seq.*:

> [W]here a state or the United States creates or organizes a corporation and operates the same for a commercial purpose, it is ordinarily held subject to suit the same as any private corporation organized for the same purpose.

*Id.* at 801.

> [C]orporations performing what are essentially public or governmental functions are in effect part of the government [and] actions against such corporations are in effect against the government, and ... in the absence of the sovereign's consent to suit, they cannot be sued.

*Id.* at 803.

> In applying the rule that a governmental corporation is ordinarily immune from suit while performing a public function, but is subject to suit if performing a private function, some confusion has arisen in determining when a corporation is in fact engaged in a private function. It would seem reasonable to suppose that if the governmental corporation is engaged in a business of a sort theretofore engaged in by private persons or corporations for profit, such a governmental corporation would be deemed to be engaged in a private function.

*Id.* at 804–05. (For immunity purposes, "governmental agencies" and "governmental corporations" are generally treated as equivalents. *Cf. Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940); *Wallace v. Laurel County Bd. of Ed.,* 287 Ky. 454, 153 S.W.2d 915, 916 (1941).)

While the governmental/proprietary distinction may have been abolished in the context of municipal immunity, it has been employed by this Court in two subsequent opinions to determine whether an agency created by the state was entitled to immunity.

> We recognize the difficulty of classifying entities for the purposes of constitutionally protected sovereign immunity. But certainly not every business can be immunized simply because it is established by act of the General Assembly, and this corporation performs substantially the same functions as any private business engaged in the entertainment business.

*Kentucky Center for the Arts Corp. v. Berns,* Ky., 801 S.W.2d 327, 330–31 (1990). In its analysis, *Berns* also determined that the Kentucky Center for the Arts Corporation was neither an arm of the central state government nor supported by money from the state treasury. *Id.* at 330–31. These factors are primarily relevant to determining whether an entity is properly classified as a state agency. *See Withers v. University of Kentucky,* Ky., 939 S.W.2d 340, 342–43 (1997). The ultimate holding in *Berns* was that the Center for the Arts, though created by the state, was not entitled to immunity because it "was not created to discharge any 'governmental function,'" 801 S.W.2d at 330, and was not "carrying out a function integral to state government." *Id.* at 332. And we said in *Withers v. University of Kentucky, supra:*

Appellants seek to avoid the blanket of immunity by reference to *Gross v. Kentucky Board of Managers,* 105 Ky. 840, 49 S.W. 458 (1899), a case from the last century which holds that not every corporation created by the state is entitled to sovereign immunity. *Gross* was relied upon in *Kentucky Center for the Arts v. Berns,* Ky., 801 S.W.2d 327 (1991), in making a distinction between a governmental function and a proprietary function performed by an entity having governmental roots.... [A]ppellants contend that in a major aspect, the University of Kentucky Medical Center is nothing more than a hospital which is in full competition with and performs the same function as private hospitals. As such, they argue that in this respect, the University should be stripped of its immunity.

The answer to this contention is simple. The operation of a hospital is essential to the teaching and research function of the medical school.

*Id.* at 343.

As noted by our predecessor Court in *Haney, supra,* application of the governmental/proprietary test does not guarantee consistent results. *See also* Restatement (Second) Torts, *supra,* § 895C cmt. e. However, that analysis has the attribute of relative simplicity in application and affords a reasonable compromise between allowing state agencies to perform their governmental functions without having to answer for their decisions in the context of tort litigation, and allowing private enterprises to pursue their legitimate business interests without unfair competition from government agencies performing purely proprietary functions without the same costs and risks inherent in commercial enterprise.

### III. OFFICIAL IMMUNITY.

In *Board of Trustees of the University of Kentucky v. Hayse,* Ky., 782 S.W.2d 609 (1990), *cert. denied,* 497 U.S. 1025, 110 S.Ct. 3273, 111 L.Ed.2d 783 (1990), we said that the "'official immunity doctrine,' which protects a government official in making decisions involving the exercise of discretion ... protects decision making by a public official only *if* his acts are not otherwise wrongful." *Id.* at 615 (emphasis in original). Taken literally, this statement says that a public officer or employee is never immune from tort liability for negligence or other wrongful conduct in the performance of official duties. In *Franklin County v. Malone,* Ky., 957 S.W.2d 195 (1997), we said with respect to an allegedly negligent search of a person in the custody of an arresting officer that "[a]s long as the police officer acts within the scope of the authority of office, the actions are those of the government and the officer is entitled to the same immunity...." *Id.* at 202. Taken literally, this conclusion essentially confers governmental immunity on a public officer or employee so that he/she could never be subject to tort liability for the negligent performance of official duties. In retrospect, we find both of these conclusions to be unwarranted departures from established legal principles.

"Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. *Salyer v. Patrick,* 874 F.2d 374 (6th Cir.1989). Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity as discussed in

Part I of this opinion, *supra.* Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled, as discussed in Part II of this opinion, *supra.* But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am.Jur.2d, *Public Officers and Employees,* § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id.* § 322; (2) in good faith; and (3) within the scope of the employee's authority. *Id.* § 309; Restatement (Second) Torts, *supra,* § 895D cmt. g. An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed. *Franklin County v. Malone, supra,* at 201 (quoting *Upchurch v. Clinton County,* Ky., 330 S.W.2d 428, 430 (1959)). Qualified official immunity is an affirmative defense that must be specifically pled. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

■ Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.,* one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. *Franklin County v. Malone, supra,* at 201. "That a necessity may exist for the ascertainment of those facts does

not operate to convert the act into one discretionary in nature." *Upchurch v. Clinton County, supra,* at 430. *See also* Restatement (Second) Torts, *supra,* § 895D cmt. h; 63C Am.Jur.2d, *Public Officers and Employees,* §§ 324, 325 (1997).

■ Prior to *Franklin County v. Malone, supra,* no Kentucky case had ever held that a public employee was afforded absolute immunity for the negligent performance of a ministerial act simply because that act was a governmental function performed within the scope of the authority of the employee's office. Historically, public officers and employees have always been liable in tort for the negligent performance or nonperformance of the ministerial duties of their offices.

> "[I]t is equally well settled that where the law imposes upon a public officer the performance of ministerial duties in which a private individual has a special and direct interest, the officer will be liable to such individual for any injury which he may proximately sustain in consequence of the failure or neglect of the officer either to perform the duty at all, or to perform it properly.
>
> "In such a case the officer is liable as well for nonfeasance as for misfeasance or malfeasance."

*Cottongim v. Stewart,* 283 Ky. 615, 142 S.W.2d 171, 177 (1940) (quoting Mechen on Public Officers). *See also Carr v. Wright,* Ky., 423 S.W.2d 521, 522 (1968) (school teacher subject to tort liability for negligence or deliberate wrongdoing even though acting within the scope of his authority); *Shearer v. Hall,* Ky., 399 S.W.2d 701 (1965) (fiscal court members subject to tort liability for failure to perform ministerial, as opposed to discretionary, functions); *Upchurch v. Clinton County, supra* (failure to execute a ministerial act subjects a public official to damages for injury); *Whitt v. Reed,* Ky., 239 S.W.2d 489

(1951) (school superintendent, principal, maintenance supervisor, and janitor subject to tort liability for the nonperformance of ministerial duties). Even since *Malone,* we have continued to recognize the distinction between discretionary and ministerial acts and have held that the wrongful performance of a ministerial act can subject the officer or employee to liability for damages. *Kea–Ham Contracting, Inc. v. Floyd County Dev. Auth.,* Ky., 37 S.W.3d 703 (2000).

▪▪▪ The "good faith" qualification to official immunity for discretionary acts was recognized by our Court of Appeals in both *Thompson v. Huecker,* Ky.App., 559 S.W.2d 488, 496 (1977) and *Ashby v. City of Louisville,* Ky.App., 841 S.W.2d 184, 189 (1992). In *Harlow v. Fitzgerald, supra,* the United States Supreme Court defined the "good faith" component of qualified official immunity as having both an objective and subjective aspect.

> The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). The subjective component refers to "permissible intentions." *Ibid.* Characteristically, the Court has defined these elements by identifying the circumstances in which qualified immunity would *not* be available. Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official *"knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or if* he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury...." *Ibid.* (emphasis added).

*Id.* at 815, 102 S.Ct. at 2736–37 (emphasis in original).

▪▪▪ Thus, in the context of qualified official immunity, "bad faith" can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.,* objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive. 63C Am.Jur.2d, *Public Officers and Employees,* § 333 (1997). Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith. *Wegener v. City of Covington,* 933 F.2d 390, 392 (6th Cir.1991), *as modified by, Cox v. Kentucky Dept. of Transp.,* 53 F.3d 146 (6th Cir.1995).

To the extent that *Board of Trustees of the University of Kentucky v. Hayse, supra,* holds that a public officer or employee is *never* immune from tort liability for negligent or otherwise wrongful conduct in the performance of his/her official duties, and to the extent that *Franklin County v. Malone, supra,* holds that a public officer or employee is *always* immune from tort liability for negligent or otherwise wrongful conduct in the performance of his/her official duties, they are overruled.

## IV. BOARD OF CLAIMS ACT.

▪▪▪ As noted in *Reyes v. Hardin Memorial Hospital, supra,* the words "sovereign immunity" are not found in the Constitution of Kentucky. Rather, sovereign immunity is a common law concept recognized as an inherent attribute of the state. *Commonwealth v. Kelley,* 314 Ky.

581, 236 S.W.2d 695, 696 (1951). Thus, contrary to assertions sometimes found in our case law, Sections 230 and 231 of our Constitution are not the source of sovereign immunity in Kentucky, but are provisions that permit the General Assembly to waive the Commonwealth's inherent immunity either by direct appropriation of money from the state treasury (Section 230) and/or by specifying where and in what manner the Commonwealth may be sued (Section 231). *Reyes, supra*, at 338. Thus, the Board of Claims Act enacted by the 1946 General Assembly[5] and substantially amended to its present-day form by the 1950 General Assembly[6] represents not a creation of immunity, but rather a limited waiver of immunity to the extent that immunity exists. It also designates where and when a claim can be asserted against the Commonwealth or against an otherwise immune agency, officer, or employee.

It is the intention of the General Assembly to provide the means to enable a person negligently injured by the Commonwealth, any of its cabinets, departments, bureaus or agencies, or any of its officers, agents or employees while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies to be able to assert their just claims as herein provided. *The Commonwealth thereby waives the sovereign immunity defense only in the limited situations as herein set forth . . . .* The Board of Claims shall have exclusive jurisdiction to hear claims for damages except as otherwise specifically set forth by statute, against the Commonwealth, its cabinets, departments, bureaus, agencies or any of its officers, agents or employees while acting within the scope of their employment by the Commonwealth, its

cabinets, departments, bureaus or agencies.

KRS 44.072 (emphasis added).

■ Since this statute is *prima facie* only a waiver of sovereign immunity, the last sentence thereof, which vests exclusive jurisdiction in the Board of Claims can apply only to the Commonwealth and those agencies, officers, or employees who are cloaked with sovereign, governmental, or official immunity. As a waiver of immunity, it has no application to those governmental agencies, officers or employees who are not cloaked with immunity.

Likewise, KRS 44.073(2) provides:

The Board of Claims shall have primary and exclusive jurisdiction over all negligence claims for the negligent performance of ministerial acts against . . . agents, or employees . . . while acting within the scope of their employment by the Commonwealth. . . .

■ To the extent that this statute purports to waive immunity for the performance of ministerial acts, it is a nullity; for public agents and employees are not vested with immunity for the negligent performance of their ministerial functions.

The purpose of this statute [Board of Claims Act] was not to grant a cloak of immunity behind which all employees of the State could hide from their individual responsibility for their negligent acts, but to waive immunity by reason of sovereignty, and to facilitate simple processing of claims against the State.

*Slusher v. Miracle*, Ky., 382 S.W.2d 867, 869 (1964).

Finally, KRS 44.073(8) provides:

No action for negligence may be brought in any court or forum other than the Board of Claims against the Common-

---

**5.** 1946 Ky. Acts, ch. 189, §§ 1,3, par. 1.

**6.** 1950 Ky. Acts, ch. 50, § 1.

wealth, any of its cabinets, departments, bureaus, or agencies or any of its officers, agents, or employees while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus, or agencies.

 To the extent that this statute attempts to transfer jurisdiction over non-immune agencies, officers and employees from the circuit court to the Board of Claims, it is unconstitutional. Section 112(5) of the Constitution of Kentucky provides that "[t]he Circuit Court shall have original jurisdiction of all justiciable causes not vested in some other court." This provision vests the General Assembly with the authority to determine which court shall have original jurisdiction over a justiciable cause. For example, the enactment of KRS 24A.010(1) [7] transferred original jurisdiction over certain actions from the circuit court to the district court. The Board of Claims, however, is not a court. *Reyes v. Hardin Memorial Hospital*, supra, at 342. Thus, Section 112(5) does not authorize a transfer of original jurisdiction over a tort claim against a non-immune agency, officer or employee from the circuit court to the Board of Claims.

 Finally, to the extent that the 1986 amendments to the Board of Claims Act could be construed as attempts to limit the liability of non-immune persons or entities to the liability limits set forth in KRS 44.070(5), those provisions would violate Section 54 of the Constitution:

The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.

It is a well established principle of constitutional law and statutory construction that if a statute is reasonably susceptible to two constructions, one of which renders it unconstitutional, "the court must adopt the construction which sustains the constitutionality of the statute." *Davidson v. American Freightways, Inc.*, Ky., 25 S.W.3d 94, 96 (2000) (quoting *American Trucking Ass'n v. Commonwealth, Transp. Cabinet*, Ky., 676 S.W.2d 785, 789–90 (1984)). Thus, we construe the 1986 amendments to the Board of Claims Act as applying only to otherwise immune persons or entities and not to governmental agencies, officers and employees who are not immune from tort liability.

## V. BOARD OF EDUCATION.

The Jefferson County Board of Education asserts that it is a political subdivision of the central state government and is, therefore, entitled to the sovereign (absolute) immunity of the state. We and our predecessor Court have often addressed this issue and have usually held that local boards of education are immune from tort liability for their actions. *E.g., Ammerman v. Bd. of Ed. of Nicholas County*, Ky., 30 S.W.3d 793, 797 (2000); *Clevinger v. Bd. of Ed. of Pike County*, Ky., 789 S.W.2d 5 (1990); *Smiley v. Hart County Bd. of Ed.*, Ky., 518 S.W.2d 785 (1975); *Copley v. Bd. of Ed. of Hopkins County*, Ky., 466 S.W.2d 952 (1971); *Carr v. Wright*, supra; *Cullinan v. Jefferson County*, supra; *Wood v. Bd. of Ed. of Danville*, Ky., 412 S.W.2d 877 (1967); *Wallace v. Laurel County Bd. of Ed.*, 287 Ky. 454, 153 S.W.2d 915 (1941). However, on only three of those occasions have we or our predecessor Court undertaken an analysis of the nature of the immunity enjoyed by a local board of education.

In *Wallace v. Laurel County Board of Education*, supra, our predecessor Court concluded that a local board of education is

---

7. 1976 Ky. Acts (Ex.Sess.), ch. 28, § 1.

a state agency entitled to governmental immunity.

There is but one question presented on this appeal: Is a County Board of Education liable in tort? To answer this question, it is necessary to determine whether or not the Board in operating its bus was exercising a governmental function, or a corporate or proprietary function. If the Board was exercising the former, it is not liable; while if engaged in the latter, it is liable.

. . .

There can be no doubt from these decisions but that the County Board of Education is an arm of the state and that in operating common schools it is engaged in a governmental function.

*Id.,* 153 S.W.2d at 916. Obviously, there would have been no need to engage in a governmental/proprietary analysis if the Board were entitled to absolute sovereign immunity.

In *Cullinan v. Jefferson County, supra,* our predecessor Court, after first correctly noting that "[l]ocal school boards fulfill a governmental function of state government by providing public education within a particular geographical area," *id.* at 408, 153 S.W.2d 915, concluded, however, that "a school board is a political subdivision and arm of the state government," *id.,* and "[a]s an integral part of the state the Jefferson County Board of Education likewise is entitled to protection under the state's sovereign immunity." *Id.*

Our most recent analysis of this issue was in *Clevinger v. Board of Education of Pike County, supra:*

There has never been any question about the status of a local school board as an agency of state government, but, if there were, such is now beyond the realm of argument because of our decision in *Rose v. The Council for Better Education, Inc.,* Ky., 790 S.W.2d 186

(1989). *Rose* recognizes public schools are a responsibility of the state, and local school boards exist simply as agencies of state government.

*Id.* at 10–11.

In addition to holding for the first time that local boards of education were cloaked with sovereign immunity, *Cullinan, supra,* also held that counties were political subdivisions of the state and, thus, entitled to sovereign immunity. With respect to counties, however, that was not a new proposition. *See Edwards v. Logan County,* 244 Ky. 296, 50 S.W.2d 83, 85 (1932); *Forsythe v. Pendleton County,* 205 Ky. 770, 266 S.W. 639 (1924); *Breathitt County v. Hagins,* 183 Ky. 294, 207 S.W. 713 (1919); *Marion County v. Rives & McChord,* 133 Ky. 477, 118 S.W. 309, 311 (1909); *Hite v. Whitley County,* 91 Ky. 168, 15 S.W. 57 (1891); *Downing v. Mason County,* 87 Ky. 208, 8 S.W. 264 (1888). To the extent that extending sovereign immunity to counties can be justified, *but see Cullinan, supra,* at 411–12 (Palmore, J., dissenting), it is because they are local *governments* authorized and recognized as such by the Constitution. Ky. Const. §§ 63, 144. Hence, their characterization as "political subdivisions of the state" has a constitutional foundation.

■ Conversely, the Constitution does not provide for the creation of local boards of education. It vests the responsibility for providing "an efficient system of common schools" solely in the hands of the legislature. Ky. Const. § 183. "The General Assembly must not only establish the system, but it must monitor it on a continuing basis so that it will always be maintained in a constitutional manner. The state must carefully supervise it, so that there is no waste, no duplication, no mismanagement, at any level." *Rose v. Council for Better Educ., Inc.,* Ky., 790

S.W.2d 186, 211 (1989). Thus, as correctly observed in *Clevinger v. Board of Education of Pike County, supra,* public schools are the responsibility of the state, and the General Assembly has established the Kentucky Board of Education, KRS 156.070, and the local school boards, KRS 160.160, as agencies through which it implements its constitutional mandate, much as the Executive Branch of government delegates many of its responsibilities to its cabinets. A local board of education is not a "government," but an agency of state government. As such, it is entitled to governmental immunity, but not sovereign immunity. To the extent that *Cullinan v. Jefferson County, supra,* holds otherwise, it is overruled. Thus, as discussed in Part II of this opinion, *supra,* whether the Jefferson County Board of Education is subject to tort liability in this case partially depends upon whether it was performing a governmental function or a proprietary function in authorizing the organization and maintenance of extracurricular baseball teams at Waggener High School.

▮ Yanero asserts that sponsoring a baseball team is not "a function integral to state government." *Kentucky Center for the Arts Corp. v. Berns, supra,* at 332. We disagree.

> The organization of school athletic teams in public schools is a governmental function so that in the absence of statute, school districts, school boards, or other agencies in charge of public schools are immune from liability for injuries sustained by players in practice or games . . . .

57 Am.Jur.2d, *Municipal, County, School, and State Tort Liability,* § 491 (2001).

In creating the Kentucky Board of Education, the General Assembly recognized that its functions would include the management of interscholastic athletics, and it authorized the Board to designate an agent for the purpose of performing this function. KRS 156.070(2). While we have no cases directly on point, we note that the injury for which tort liability was sought in *Cullinan v. Jefferson County, supra,* was sustained when the plaintiff stepped in a hole while playing tennis on school property. Other jurisdictions agree that interscholastic athletics are an integral part of secondary education and, thus, a governmental function. *Smith v. Consol. School Dist. No. 2,* 408 S.W.2d 50 (Mo.1966); *Thompson v. Bd. of Ed.,* 12 N.J.Super. 92, 79 A.2d 100 (1951); *Martini v. Olyphant Borough School Dist.,* 83 Pa. D & C 206, 54 Lack.Jur. 57 (Pa. C.P.1953); *Garza v. Edinburg Consol. Indep. School Dist.,* 576 S.W.2d 916 (Tex.Ct.App.1979); *see also Indiana High School Athletic Ass'n v. Carlberg,* 694 N.E.2d 222, 229 (Ind.1997) ("athletics are an integral part of this constitutionally-mandated process of education").

▮ We conclude that in authorizing interscholastic athletics at its schools, the Jefferson County Board of Education was performing a governmental function; thus, it was entitled to the protection of governmental immunity and cannot be sued in tort for any negligence in the performance of that function. For the same reason, it cannot be held liable for any alleged failure to establish rules for the wearing of batting helmets during batting practice, for the treatment of head injuries sustained during participation in interscholastic athletics, or for training of coaches and athletic directors. Nor can it be held vicariously liable for any alleged negligence of its employees. *Franklin County v. Malone, supra,* at 199–200; *Moores v. Fayette County,* Ky., 418 S.W.2d 412, 414 (1967). (Under the Kentucky Education Reform Act, the local board of education is no longer directly involved in hiring school personnel. The school principal, after con-

sultation with the school council, hires school personnel from a list of applicants submitted by the superintendent. KRS 160.345(2)(h).)[8]

## VI. ATHLETIC DIRECTOR.

▮ Appellee Robert Stewart was the athletic director at Waggener High School at the time of Yanero's injury. Stewart's primary duties as athletic director were to schedule athletic events and to maintain and schedule athletic facilities. He also supervised the head coaches who, in turn, supervised their assistant coaches. Stewart was not present in the gymnasium on the occasion of Yanero's injury. Yanero does not claim that Stewart is vicariously liable for the negligent acts of the coaches. Public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those employed by them if they have employed persons of suitable skill. *Franklin County v. Malone, supra,* at 199–200; *Moores v. Fayette County, supra,* at 414.

▮ Stewart did not hire the coaches, but he was a member of the school council that recommended that they be hired. Evaluating the credentials of a prospective employee is an inherently subjective process which, of course, is the essence of a discretionary function. However, there is also a ministerial aspect to the hiring process in that the person or persons to whom the hiring of subordinates is entrusted must at least attempt to hire someone who is not incompetent. Thus, there is authority for the proposition that a public officer can be subject to personal liability in tort for hiring an employee known to that officer to be incompetent to perform the task for which he/she was hired. *Whitt v. Reed, supra,* 239 S.W.2d at 491. Yanero

asserts that Jeffrey Becker, who was hired as an assistant coach and assigned to "help" Allen Davis coach the junior varsity baseball team, had only a bachelor's degree in horticulture and had been previously employed primarily as a stock clerk at a supermarket. However, he had also coached seventh and eighth grade baseball at St. Pius X Elementary School in Louisville for six years prior to his employment at Waggener. Reasonable jurors could not believe that, by participating in the hiring of a person with six years of coaching experience, Stewart participated in hiring an employee known to him to be incompetent to perform the duties of an assistant baseball coach.

Yanero also asserts that Stewart was negligent in failing to promulgate a written rule with specified penalties with respect to the wearing of helmets by student athletes during baseball batting practice. Yanero had been playing organized baseball for eleven years prior to his injury. He admits that every coach along the way, including Davis and Becker, had told him that he was required to wear a batting helmet during batting practice and that he simply chose to disregard this rule.

Q. What was your understanding, if you can recall, of why you were to wear a batting helmet?

A. Because it was dangerous.... If you got hit like in the head it would hurt and you would like get injured.

▮ Remarkably, Yanero posits that if the rule had been in writing with designated penalties he might have been more inclined to obey it. We reject this gratuitous speculation and conclude that since Yanero was aware of the rule, though unwritten, the failure to reduce the rule to

**8.** KRS 65.2003(3) has no application here since a board of education is not a "local government" as defined in KRS 65.200(3).

writing did not cause his injury. We agree with Judge Mac Swinford's observation that "tort liability will not be imposed for the failure to promulgate rules deemed necessary by a private litigant." *Miller v. United States*, 378 F.Supp. 1147, 1149 (E.D.Ky.1974), *aff'd*, 522 F.2d 386 (6th Cir. 1975). Furthermore, rule-making is an inherently discretionary function. *Franklin County v. Malone*, *supra*, at 200. Thus, Stewart would be entitled to qualified ("good faith") official immunity with respect to the performance of that function; and there is no basis for concluding that his failure to promulgate a written rule requiring student athletes to wear batting helmets during baseball batting practice violated any constitutional, statutory, or other clearly established right applicable to Yanero, or amounted to a willful or malicious intent to harm Yanero, or was the product of a corrupt motive, as discussed in Part III of this opinion, *supra*.

## VII. COACHES.

Yanero's cause of action against Davis and Becker is essentially one for negligent supervision. Teachers assigned to supervise juveniles during school-sponsored curricular or extracurricular activities have a duty to exercise that degree of care that ordinarily prudent teachers or coaches engaged in the supervision of students of like age as the plaintiff would exercise under similar circumstances. *Cf.* John S. Palmore and Ronald W. Eades, 2 *Kentucky Instructions to Juries*, § 14.04 (4th ed. Anderson 1989). *See Wesley v. Page*, Ky., 514 S.W.2d 697 (1974). The premise for this duty is that a child is compelled to attend school. "The result is that the protective custody of teachers is mandatorily substituted for that of the parent." *McLeod v. Grant County School Dist. No. 128*, 42 Wash.2d 316, 255 P.2d 360, 362 (1953). The performance of that duty in this instance was a ministerial, rather than a discretionary, function in that it involved only the enforcement of a known rule requiring that student athletes wear batting helmets during baseball batting practice. The promulgation of such a rule is a discretionary function; the enforcement of it is a ministerial function. Yanero and other members of Waggener's junior varsity baseball team testified in discovery depositions that team members were regularly permitted to engage in batting practice without wearing helmets. Davis and Becker have denied these assertions and have further claimed that official batting practice had not yet begun when Yanero was struck by Coker's pitch.

Yanero's cause of action is not barred by his own negligence or that of Coker (who claims the errancy of his pitch was caused when he accidentally caught his toe in the pitching rubber as he threw the ball). "The very adventuresome nature of teenagers leads to experimentation and should place a teacher on notice that he can look forward not only to the expected but also to the unexpected." *Wesley v. Page*, *supra*, at 699. *Cf. Scott v. Independent School Dist.*, 256 N.W.2d 485 (Minn. 1977) (liability predicated upon failure to enforce requirement that students wear safety goggles during industrial arts class). The issues with respect to the negligence of the coaches vis-a-vis that of Yanero and/or Coker is best left to a jury properly instructed in accordance with KRS 411.182.

## VIII. KENTUCKY HIGH SCHOOL ATHLETIC ASSOCIATION.

The KHSAA is an unincorporated association with a membership of 286 public, private and parochial schools. It was originally formed in 1917 by principals of several high schools for the purpose of devel-

oping and regulating high school athletics within the Commonwealth of Kentucky. It operates under the direction of its own board of control whose membership is primarily elected by its member institutions. (As noted, *infra,* four members are appointed by the Kentucky Board of Education.) The chief operating officer of the KHSAA is a commissioner appointed by the board of control. The KHSAA is funded primarily by profits derived from state high school football playoffs and the state high school basketball tournament. It also receives dues paid by its member institutions, but draws no money directly from the state treasury. *See Horner v. Kentucky High School Athletic Ass'n,* 43 F.3d 265, 268–70 (6th Cir.1994), 1978 OAG 239, and the deposition testimony of Louis Stout, present commissioner of the KHSAA. The KHSAA promulgates rules governing some, but not all, interscholastic athletic contests, rules relating to the eligibility of student athletes, and the duties and qualifications of coaches and game officials, etc. 702 KAR 7:065 § 3(4); *Horner, supra,* at 269–70.

KRS 156.070(1) vests in the Kentucky Board of Education "the management and control of the common schools and all programs operated in these schools, including interscholastic athletics ...." KRS 156.070(2) authorizes the Kentucky Board of Education "to designate an organization or agency to manage interscholastic athletics in the common schools." By 702 KAR 7:065 § 1, the Board has designated the KHSAA as its "agent to manage interscholastic athletics at the high school level in the common schools, including a private school desiring to associate with KHSAA and to compete with a common school." As one condition for this designation, the Board requires the KHSAA to accept four at-large members appointed by the Kentucky Board of Education to its board of control. 702 KAR 7:065 § 2(1).

At the time of Yanero's injury, the KHSAA had adopted the baseball rules set forth in the *1997 High School Baseball Rules* and *1997 High School Baseball Case Book,* both published by the National Federation of State High School Associations, of which the KHSAA is a member. The baseball rules require each batter, on-deck batter, runner, retired runner, and player/student in a coach's box, as well as any non-adult bat/ball shagger to wear a standardized batting helmet at all times. A first violation of this rule requires a warning; a subsequent violation requires ejection from the game. These, however, are game rules that apply to interscholastic varsity competitions, not practice rules. The KHSAA does not promulgate rules for practices or for junior varsity competitions.

■▬▬▬ The KHSAA claims it is entitled to either sovereign immunity or governmental immunity. However, it is clearly not a political subdivision of the state, *Wissel v. Ohio High School Athletic Ass'n,* 78 Ohio App.3d 529, 605 N.E.2d 458, 462 (1992), *cause dismissed,* 64 Ohio St.3d 1434, 595 N.E.2d 943 (1992); and the fact that many of its member schools are private or parochial institutions, not enjoying governmental immunity, precludes its being characterized as a state agency. *Coughlon v. Iowa High School Athletic Ass'n,* 260 Iowa 702, 150 N.W.2d 660, 662–63 (Iowa 1967). However, it is an agent of the Kentucky Board of Education and, in that capacity, functions the same as if the Board had designated an individual, *e.g.,* KHSAA Commissioner Stout, to manage interscholastic athletics. As such, the KHSAA is entitled to the qualified official immunity available to officers and employees of the state.

■▬▬▬ As with respect to Stewart, the athletic director, Yanero asserts negli-

gence on the part of the KHSAA in failing to promulgate a rule requiring student athletes to wear batting helmets during baseball batting practice. The answer is the same: rule-making is a discretionary function in the performance of which a public officer is entitled to official immunity; and there is no evidence to support a finding that, in failing to promulgate such a rule, the KHSAA acted in bad faith, *i.e.*, violated a constitutional, statutory, or other clearly established right, or acted with a willful or malicious intent to cause harm, or with a corrupt motive. Yanero also claims the KHSAA negligently failed to develop, implement and enforce rules and regulations pertaining to the proper hiring and training of coaches. However, KHSAA Bylaw 27 specifically describes the qualifications required of level 1 faculty coaches, such as Davis, and level 2 non-faculty coaches, such as Becker, as well as continuing education and training requirements for all coaches.

Finally, Yanero claims the KHSAA is vicariously liable for the alleged negligence of Davis and Becker. Even if a public officer could be held vicariously liable for the torts of a subordinate, which he/she generally cannot, *Franklin County v. Malone, supra,* at 199–200, *Moores v. Fayette County, supra,* at 414, the fact remains that Davis and Becker were employees of the Jefferson County Board of Education, not the KHSAA.

Accordingly, the summary judgments entered in favor of the Jefferson County Board of Education, Stewart, and the KHSAA are affirmed, and the summary judgments entered in favor of Davis and Becker are reversed; and this case is remanded to the Jefferson Circuit Court for further proceedings in accordance with this opinion.

LAMBERT, C.J.; GRAVES, JOHNSTONE, KELLER and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in result only without separate opinion.