Patricia FAULKNER, Appellant,

v.

Scott GREENWALD, Appellee.

No. 2009–CA–001802–MR.

Court of Appeals of Kentucky.

March 11, 2011.

Brian E. Clare, Louisville, KY, for Appellant.

Byron E. Leet, Rania M. Basha, Louisville, KY, for Appellee.

Before CAPERTON and WINE, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

Patricia Faulkner appeals from the September 18, 2009, memorandum and order of the Jefferson Circuit Court. That order dismissed Faulkner's personal injury lawsuit against Scott Greenwald. As we hold that the trial court erred in its conclusion that Greenwald was entitled to qualified immunity, we reverse and remand.

Scott Greenwald was the athletic director at Seneca High School, in Louisville, Kentucky. Greenwald's responsibilities included the safety and maintenance of the athletic facilities, including a concession stand located adjacent to the school's soccer field. Patricia Faulkner was a parent of a Seneca High School soccer player. On August 14, 2007, Faulkner was volunteering in the concession stand adjacent to the school's soccer field. The concession stand was a small building with a large window opening and counter where customers would make purchases. When the concession stand was not in use, the opening was covered with a large, solid wooden door. The window was hinged above the opening. When the concession stand was in use, the window was lifted and attached to the ceiling with a chain. When the window was chained open, it hung so low that it hindered opening and closing the concession stand door. To permit the concession stand door to fully open, it was customary practice for the door to be wedged under the window, propping the window covering open. The window was propped open in this manner on the day that Faulkner was injured. While she was waiting on a customer, the concession stand door slipped out of position, causing the overhead wooden door to fall and strike her. As a result, Faulkner suffered numerous injuries.

Faulkner brought this action against the Jefferson County Board of Education (JCBE) and Athletic Director Scott Greenwald. In her complaint, Faulkner alleged that Greenwald was negligent with respect to the maintenance and care of the overhead door. She also alleged the vicarious liability of JCBE. JCBE and Greenwald moved for summary judgment, asserting governmental immunity and qualified official immunity, respectively. On September 18, 2009, summary judgment was granted for JCBE and Greenwald, on grounds of immunity. This appeal followed.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. With regard to qualified official immunity, "[s]ummary judgments play an especially important role", as the defense renders one immune not just from liability, but also from suit itself. *Rowan County v. Sloas*, 201 S.W.3d 469, 474 (Ky.2006) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The material facts in this case are not in dispute. We must decide, as a matter of law, whether Greenwald was properly held to possess qualified official immunity and consequently entitled

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Kentucky Rules of Civil Procedure.

to judgment as a matter of law. *See Sloas*, 201 S.W.3d at 475.

Sovereign immunity has been defined as "an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky.2001). Sovereign immunity, in Kentucky, derives from section 231 of the Constitution of Kentucky. This immunity has been extended to public officials who are sued in their official capacities. *Yanero, supra*, at 519.

■ A board of education is an agency of state government, and as such is possessed of governmental immunity. *Schwindel v. Meade County*, 113 S.W.3d 159, 168 (Ky.2003). "[I]t can be sued for damages for the tortious performance of a proprietary function but not a governmental function." *Id.* A governmental function is one that is integral to state government whereas a proprietary function is one that is engaged in for profit. *Id.* It has been held that interscholastic athletics is a governmental function and that "[t]he receipt of income from admission fees and sales of refreshments ... [does] not convert [an] interscholastic athletic event into a proprietary function." *Id.* (citations omitted). Accordingly, it appears as though JCBE was properly granted summary judgment as a matter of law. However, Faulkner's appeal does not challenge the appropriateness of summary judgment in favor of JCBE, but rather the appropriateness of summary judgment in favor of Greenwald, the athletic director.

■ The trial court granted summary judgment in favor of Greenwald by application of the qualified official immunity doctrine. To determine when public employees are subject to immunity, courts have identified two classes of acts, discretionary and ministerial, as pivotal. *See,*

*e.g., Yanero*, 65 S.W.3d 510. Public employees are afforded immunity for their discretionary acts performed in good faith and within the scope of their authority. *Id.* at 522. On the other hand, employees are not immune from suit for the negligent performance of a ministerial act. *Id.*

Faulkner first argues that the distinction between discretionary and ministerial duties requires a clearer definition. Next she argues that maintenance of a concession stand is not a discretionary act and is therefore not deserving of immunity.

■ The distinction between discretionary and ministerial acts has been defined in Kentucky law as follows:

[d]iscretionary or judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Collins v. Commonwealth of Ky. Natural Resources and Environmental Protection Cabinet*, 10 S.W.3d 122, 125 (Ky.1999) (citations omitted).

A ministerial act, on the other hand, is one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. That a necessity may exist for the ascertainment of ... facts does not operate to convert the act into one discretionary in nature.

*Sloas*, 201 S.W.3d at 478 (citations omitted). "However, an act is not necessarily taken out of the class styled "ministerial" because the officer performing it is vested with a discretion respecting the means of method to be employed." *Collins*, 10 S.W.3d at 125–26.

In our opinion these definitions are clear and we therefore disagree with Faulkner's argument that the definitions of discretionary and ministerial functions need elaboration. Kentucky courts have clearly identified the two types of functions, and there is no confusion as to their definition. Accordingly, Faulkner's first argument is without merit.

However, we agree with Faulkner's contention that safely maintaining the concession stand was a ministerial duty. This case is not unlike *Collins*, where the question of ministerial versus discretionary acts arose from the inspection of drainage culverts. The Court said "these inspections require attention to specific details, such as whether the culvert is blocked and whether it is large enough to handle a specified amount of water. The regulations can be enforced in a routine, ministerial manner, and thus their negligent performance may be actionable under the Act." *Collins*, 10 S.W.3d at 126. The same could certainly be said with respect to the safety of the concession stand. As such, we disagree with the trial court's conclusion that Greenwald was entitled to official immunity.

The Supreme Court of Kentucky has held that employees of a school board who failed to properly maintain high school bleachers may be subject to liability for their negligent performance of a ministerial duty.[3] *Schwindel*, 113 S.W.3d at 169. In so holding, the Court in *Schwindel* cited to *Yanero*'s clarification that a task

does not become discretionary because the performing party has some discretion in the manner of carrying it out. *Id.* In the case before us, Greenwald had a duty to safely maintain the athletic facilities and premises, just as the parties in *Schwindel* had a duty to safely maintain the bleachers and the inspectors in *Collins* had a duty to see that the culvert was not blocked and was large enough to handle a specified amount of water. Although Greenwald may have possessed some discretion concerning the door and window configuration in the concession stand, the task itself was ministerial in nature. Accordingly, summary judgment was inappropriate. Whether Greenwald negligently performed his duties with respect to the concession stand is for the trier of fact.

For the foregoing reasons, the September 18, 2009, memorandum and order of the Jefferson Circuit Court is reversed and this cause remanded for further consistent proceedings.

ALL CONCUR.

---

**3.** Although the defendants to whom the Court in *Schwindel* refers were unknown parties, we do not believe it inhibits application of the legal premise to the facts before us.