Marian MUCKER, as an Employee of the Jefferson County Board of Education; and Marian Mucker, Plant Operator of Minors Lane Elementary School, Appellant

v.

Eulene BROWN, Appellee

NO. 2012–CA–001013–MR

Court of Appeals of Kentucky.

RENDERED: MAY 15, 2015; 10:00 A.M.

BRIEFS FOR APPELLANT: Ekundayo Seton, Byron E. Leet, Louisville, Kentucky

BRIEF FOR APPELLEE: George Schuhmann, Louisville, Kentucky, Kenneth G. Doane, Jr., Jeffersonville, Indiana

BEFORE: COMBS, STUMBO AND THOMPSON, JUDGES.

*OPINION*

THOMPSON, JUDGE:

The matter is before us on remand from the Kentucky Supreme Court. Our Supreme Court vacated this Court's opinion rendered on June 7, 2013, and directed that we consider the issue of qualified official immunity in light of its decisions in *Marson v. Thomason*, 438 S.W.3d 292 (Ky. 2014). We have done so and conclude that qualified official immunity does not apply to the claims asserted against Marian Mucker, in her individual capacity as an employee of the Jefferson County Board of Education, and affirm an order of the Jefferson Circuit Court denying her motion for summary judgment.

As a plant operator at the Minors Lane Elementary School, Mucker was familiar with the plant operator's manual. She testified that pursuant to the manual, a plant operator had a duty to keep the sidewalks clear of ice and snow. She further testified that she was to begin her work at 6:00 a.m. and had a duty to inspect and treat the sidewalks for ice and snow. If needed, she normally began treating the grounds for ice and snow in preparation for the arrival of children and parents at approximately 7:00 a.m. Mucker testified that she was aware that the gym door entrance was used to enter the school.

On February 1, 2010, Mucker arrived at the school. It had been below freezing the previous night and she observed ice on the sidewalks outside the school. She first attended to other duties within the school before removing the ice and then began treating the sidewalks for ice in front of the building, an area away from the gym entrance.

Eulene Brown was an instructor at the school and a site director at the YMCA Child Enrichment Program operated on the school's premises. The Program began at 7:00 a.m. On February 1, 2010, while entering the school, Brown slipped and fell on a walkway leading to the gym entrance that had not been cleared of ice.

In addition to Mucker's deposition, Brown submitted the affidavit of Wanda Arnold, a Jefferson County Public School instructor and YMCA Child Enrichment Program employee, in opposition to Mucker's motion for summary judgment. She stated that when she arrived at the school at approximately 6:30 a.m., Mucker was present but the sidewalks had not been cleared of ice. She further stated that at approximately 7:00 a.m., a student had slipped and fallen on ice accumulated on the sidewalk by the gym door. When she went to advise Mucker that the sidewalks needed to be cleared, Mucker was in the teacher's lounge. During the ten- to fifteen-minute delay it took Mucker to clear the sidewalks, Brown slipped and fell.

■ The sole issue presented is whether the circuit court properly denied Mucker's assertion that she is entitled to qualified official immunity. Although generally an order denying a summary judgment is interlocutory and not appealable, an order denying a substantial claim of immunity is immediately appealable even in the absence of a final judgment. *Breathitt County Board of Education v. Prater*, 292 S.W.3d 883, 887 (Ky.2009).

■ School boards and their employees are considered agencies of the state and enjoy governmental immunity. *James v. Wilson*, 95 S.W.3d 875, 904 (Ky.App. 2002). "The immunity that an agency enjoys is extended to the official acts of its officers and employees. However, when such officers or employees are sued for negligent acts in their individual capacities, they have qualified official immunity." *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky.2007). Mucker was sued in her individual capacity.

■ The doctrine of qualified official immunity is one that has been repeatedly problematic for litigants and the judiciary.

*Yanero v. Davis*, 65 S.W.3d 510 (Ky.2001), is often quoted when attempting to explain the scope of that immunity. In that case, it was written that public officers and employees are shielded from liability for the negligent performance of discretionary acts in good faith and within the scope of their authority. Negligently performing or negligently failing to perform ministerial duties is not shielded by the doctrine of qualified official immunity and a state employee may be sued in court. *Id.* at 522. While the rule appears straightforward, the distinction between a discretionary act and a ministerial act is often blurred. In *Yanero*, the Court purported to clarify the difference by defining the terms discretionary and ministerial.

■ A discretionary act involves the exercise of discretion and judgment or personal deliberation. *Id.* A ministerial act is one that is "absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* The *Yanero* Court elaborated: "An act is not necessarily 'discretionary' just because the officer performing it has some discretion with respect to the means or method to be employed." *Id.* The Court emphasized "[t]hat a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature." *Id.* (quoting *Upchurch v. Clinton County*, 330 S.W.2d 428, 430 (Ky.1959)).

Since *Yanero*, the doctrine of qualified official immunity and its discretionary versus ministerial duties analysis continues to perplex even the most learned jurists. As noted in *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky.2010), the distinction between a discretionary act and ministerial act is one not easily made because "few acts are purely discretionary or purely ministerial [.]" In *Marson*, the Court again attempted

to explain the amorphous concept of qualified official immunity.

In *Marson*, the parents of child who was injured when he fell from bleachers in a school gym filed an action against two school principals and a teacher who was supervising the children that day. They alleged the bleachers were not fully extended, and that their legally blind son walked off the retracted portion of the bleachers.

The Court reaffirmed the principles espoused in *Yanero*, and noted that "at their core, discretionary acts are those involving quasi-judicial or policy-making decisions." *Marson*, 438 S.W.3d at 297. The Court continued and attempted to simplify the distinction between discretionary acts and mandatory acts:

> The distinction between discretionary acts and mandatory acts is essentially the difference between making higher-level decisions and giving orders to effectuate those decisions, and simply following orders. Or, as we have stated, "Promulgation of rules is a discretionary function; enforcement of those rules is a ministerial function." *Williams v. Kentucky Dept. of Educ.*, 113 S.W.3d 145, 150 (Ky.2003).

*Id.*

The Court concluded that based on the evidence, "extending the bleachers was a routine duty, regularly performed by the custodian on duty, and is thus ministerial in nature to the person charged with that job." *Id.* at 298. However, the named principals did not have the ministerial duty to actually extend the bleachers but only the general duty to provide a safe environment for the children's safety and assign the task of extending the bleachers. As the Court stated:

> There is a qualitative difference in actually extending the bleachers and assigning someone to fulfill that task.

Actually extending the bleachers is a certain and required task for the custodians to whom the task is assigned, and is thus ministerial to them. It is not a task that is assigned to the principals, and is not a ministerial task as to them. Principals do have a duty to provide a safe school environment, but they are not insurers of children's safety. They must only be reasonably diligent in this task. Because that task is so situation specific, and because it requires judgment rather than a fixed, routine performance, looking out for children's safety is a discretionary function for a principal, exercised most often by establishing and implementing safety policies and procedures.

*Id.* at 299. Because their acts were discretionary in nature, the principals were entitled to qualified official immunity.

The teacher named in the complaint in his individual capacity had distinctively different duties. Although the unnamed custodian had the specific duty to extend the bleachers, the teacher also had specific duties performed on a routine basis when the children arrived at the school. Even though there was not a written procedure, "it was clear that there was a standard procedure[.]" *Id.* at 301. Applying the facts, the Court held the teacher "was given a specific task to do bus duty, which included looking out for safety issues and taking the routine steps that were the established practice for bus duty at that school. As such, his job required him to perform specific acts that were not discretionary in nature." *Id.* The teacher was not entitled to qualified official immunity. *Id.*

■ As instructed by our Supreme Court and with its most recent guidance on the issue, we address whether Mucker is entitled to qualified official immunity.

Mucker acknowledged her job duties required that she clear ice from the school's sidewalks. She was aware that on the morning of February 1, 2010, ice had accumulated on the sidewalk outside the gym, and students, parents and school personnel would be using the gym entrance by 7:00 a.m. Like the unnamed custodian in *Marson* who had the specific duty to extend the bleachers, Mucker had the specific duty to clear the sidewalks prior to the arrival of students, parents, and school personnel.

Despite the ministerial nature of her duties, Mucker contends she had discretion to decide when and where to begin removing the ice and, therefore, is entitled to qualified official immunity. While Mucker may have had some discretion where to begin her duties, she nevertheless had the ministerial duty to remove all ice and snow prior to the arrival of students, parents and school personnel. We find this case analogous to *Faulkner v. Greenwald*, 358 S.W.3d 1 (Ky.App.2011).

In *Faulkner*, this Court held that a school athletic director's duty to safely maintain a concession stand was a ministerial duty. Although the athletic director may have possessed some discretion regarding the means and methods used, the task of safely maintaining the concession stand was ministerial in nature. *Id.* at 4.

Likewise, clearing the snow and ice was the *act* Mucker was required to perform and was ministerial. Whether she performed that act unreasonably is a question properly to be resolved by the jury. As our Supreme Court emphasized in *Marson*, the focus of the inquiry is on the act itself. "If we do not focus on the act, we risk limiting ministerial acts to almost nothing except those acts that are directly compelled by an order or rule." *Marson*, 438 S.W.3d at 302. The rule that "an act can be ministerial even though it has a

component of discretion" would be undermined. *Id.*

Because we conclude that Mucker's duties were ministerial in nature, we do not need to determine whether she acted in good faith. *Bryant v. Pulaski County Detention Center*, 330 S.W.3d 461, 466 (Ky. 2011). Mucker is not entitled to qualified official immunity.

Finally, in response to Mucker's public policy argument that the denial of qualified official immunity renders her absolutely and strictly liable, we stress that our holding is limited to affirming the trial court's ruling that Mucker is not entitled to qualified official immunity and all defenses to claims against her remain. The elements of negligence must be proven and dismissal on other grounds, including the open and obvious doctrine, is not precluded.

The order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.