**William ROBERTS, Appellant,**

v.

**FAYETTE COUNTY BOARD OF EDUCATION, Appellee.**

**No. 2004–CA–001201–MR.**

Court of Appeals of Kentucky.

Sept. 30, 2005.

---

**2.** Kentucky Rules of Civil Procedure.

Beth A. Bowell, Jeffrey S. Walther, Walther, Roark, Gay & Todd, PLC, Lexington, KY, for appellant.

Robert L. Chenoweth, Chenoweth Law Office, Frankfort, KY, for appellee.

Before GUIDUGLI and TAYLOR, Judges; HUDDLESTON, Senior Judge.[1]

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the

Kentucky Constitution and Ky.Rev.Stat. (KRS) 21.580.

*OPINION*

HUDDLESTON, Senior Judge.

William Roberts appeals from a summary judgment granted to the Fayette County Board of Education. Roberts had filed suit alleging that the Board violated Kentucky Revised Statutes (KRS) 161.100 when it failed to employ him, a qualified special education teacher, and instead hired emergency certified teachers.

Roberts is certified to teach special education by the Kentucky Education Professional Standards Board. He worked as a special education facilitator and teacher at Lafayette High School in Lexington, Kentucky, on a limited contract basis,[2] for four years. A teacher becomes eligible for a continuing contract (or tenure) after he or she has been employed for four years in the same district within a six-year period.[3] Roberts' fourth year of employment with the Fayette Board was in 2001–2002. Had he been hired for the 2002–2003 school year, he would have become eligible for tenure.

In November 2001, however, two of Roberts' students filed complaints against him, alleging harassment. One student claimed that Roberts pulled him up by his shirt and pinned him against the classroom wall with a table. The other student claimed that Roberts squeezed his hand, pulled his hair, yelled at him, tapped him on the forehead with the palm of his hand and yelled at him that "he had five F's [a reference to the student's grades]." The father of one of the students contemplated bringing criminal charges of harassment against Roberts.

Dr. Robin Fankhauser, who was then the Superintendent of the Fayette Board, suspended Roberts for thirty days with pay while an investigation into the students' allegations was conducted by John Toye, who was then Director of the Department of Law Enforcement for Fayette County Public Schools. His report to Fankhauser concluded that

> Teacher Roberts is obviously frustrated with some of his students and uses unprofessional and juvenile methods when dealing with defiant or disorderly students. He resorts to yelling and using a physical approach. In many instances the problem escalates instead of subsiding and becoming under control. If Roberts intends to remain in the special education field he should be required to be re-trained in dealing with defiant, disorderly youth and should also be fully trained in safe physical management.

When the investigative report was completed, Fankhauser met with Roberts and Toye, on December 17 or 18, 2001. Also present at the meeting were Ken Cox, Director of High Schools, and Mike McKenzie, the principal of Lafayette High School. Fankhauser thereafter addressed a letter to Roberts, concluding that he had used "inappropriate strategies to refocus students" and that he had violated the Family Education Rights and Privacy Act (FERPA)[4] by discussing a student's grades in front of other students. Fankhauser directed Roberts to create a "professional growth plan" to address these issues. The letter also directed him not to touch or yell at students in the future. Roberts claims that he did not understand what this directive to create a new growth plan entailed, and wrote a letter to Fank-

---

**2.** "The term 'limited contract' shall mean a contract for the employment of a teacher for a term of one (1) year only or for that portion of the school year that remains at the time of employment." KRS 161.720(3).

**3.** *See* KRS 161.740(1)(b).

**4.** 20 U.S.C.A. § 1232g.

hauser expressing his confusion,[5] but that Fankhauser did not respond to his request for clarification. Ultimately, a professional growth plan for Roberts was created in February 2002, with the assistance of other administrators.[6] Meanwhile, on January 14, 2002, Roberts had filed a grievance in accordance with formal Board policies. The grievance voiced concerns over the investigation of the student complaints and the lack of support provided by the district.[7]

During the months of February and March 2002, Roberts was evaluated by Principal McKenzie (this appears to have been a routine evaluation) and found to be in need of further improvement in several areas of professional development. Although the evaluation has not been included in the record, Roberts' deposition testimony indicates that McKenzie found that Roberts was not meeting several of the standards listed on the evaluation form. In his summative evaluation (also not in the record), McKenzie indicated that the standards that were not met created serious concerns about the possibility of Roberts obtaining tenure, and he recommended that Roberts not be rehired for the next school year.

Roberts formally appealed Principal McKenzie's evaluation on March 22, 2002. On April 16, 2002, the Certified Evaluation Appeals Panel held a hearing into the matter, but was unable to reach a consensus concerning the status of Roberts' Final Summative Evaluation. The record contains no details regarding the appeals process, except for a memorandum from the chair of the panel stating that

[a]fter deliberation, the appeals panel was unable to reach consensus, concern-

ing the status of Mr. Roberts' Final Summative Evaluation. The panel voted 2 votes for option "C," and 1 vote for option "B." Therefore, by a 2 to 1 vote, the panel recommends that the superintendent of schools conduct further investigation concerning the Final Summative Evaluation of Mr. Roberts (Option "C").

It is unclear from the record what option "B" was.

Roberts submitted a letter of resignation on April 30, 2002. In his deposition, he explained that it was his understanding that the Board has a policy that if a teacher's limited contract is nonrenewed for cause, that teacher will never be eligible to be rehired within the school district. Because Roberts had received an unsatisfactory evaluation from his principal with the attendant recommendation that he not be renewed, he decided to resign. He believed, and testified that various officials within the district had indicated to him, that his resignation meant that he would still be eligible to teach in the Fayette County district. He stated in his deposition that "[w]hat was presented to me was that if I resigned from my position at Lafayette, that I would be left alone so that I could be rehired and given that opportunity to work with other people within the district." He also admitted, however, that no one had guaranteed him a position for the following year.

He then began to apply for vacant teaching positions with the Fayette Board for the 2002–2003 and 2003–2004 school years, but he was not hired for any of them. Some of these numerous vacancies (over forty in the 2002–2003 school year) were filled instead by emergency certified personnel, rather than by people like Rob-

---

5. The letter is cited as an exhibit to Roberts' deposition, but it is not in the record.

6. The growth plan is not in the record.

7. The grievance is not in the record.

erts who were certified special education instructors. KRS 161.100 provides that a school district may hire such individuals with "emergency" certification when "it is impossible to secure qualified teachers for a position."

The statute provides:

When a district board of education satisfies the Education Professional Standards Board that it is impossible to secure qualified teachers for a position in a school under the control of the district board, the Education Professional Standards Board may issue emergency certificates to persons who meet the qualifications determined by the Education Professional Standards Board for emergency certificates. An emergency certificate shall be valid only for the specific job for which issued and for the current school term.

Meanwhile, however, Roberts was able to find employment on a limited contract basis with Clark County Public Schools for the 2002–2003 year, as a special education teacher. His salary was approximately $3,000.00 less than he had earned in Fayette County.

On November 15, 2002, Roberts filed a complaint against the Fayette County Board of Education in Fayette Circuit Court, alleging that the Board had violated KRS 161.100 when it hired persons with emergency certification to teach special education, and did not hire him, a certified applicant. He asked for damages, injunctive relief including an order directing the Board to comply with the statute requiring it to hire certified applicants before persons with emergency certification, costs and fees, and a trial by jury.

The Fayette Board ultimately filed a motion for summary judgment, arguing that it was protected from suit by governmental immunity, and that it was in any case the wrong defendant. In the alternative, the Board also cited to an administrative regulation that defines "qualified teacher" as

a teacher who holds the appropriate certification for the position **unless the superintendent of the employing school district has documented evidence that the teacher is unsuitable for appointment.**[8]

In its opinion and order granting summary judgment, the circuit court held that Roberts had failed to state a claim under KRS 161.100 because there was sufficient documentation for the superintendent to determine that Roberts was "unsuitable for appointment" pursuant to 16 KAR 2:120 and therefore not a qualified teacher pursuant to KRS 161.100. Alternatively, the court also found that the board was immune from claims such as Roberts' under the doctrine of governmental immunity. This appeal followed.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[9] The circuit court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."[10] On appeal, our duty is to determine "whether the trial court correctly found

8. 16 Ky. Adm. Reg. (KAR) 2:120 (emphasis supplied).

9. Ky. R. Civ. Proc. (CR) 56.03.

10. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991) (citations omitted).

that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law."[11]

■ We are hampered in our review of this case by the incompleteness of the record. Both parties make references to exhibits that were attached to Roberts' deposition, but these exhibits are not in the record provided to this Court. It is the duty of the appellant to see that the record is complete on appeal.[12] To the extent that the record is incomplete, the reviewing court must presume that the omitted portions support the summary judgment.[13]

We turn first to the question of whether the Board is protected by the doctrine of governmental immunity. Although we agree with the circuit court that the Board enjoys immunity for its governmental functions under the holding in *Yanero v. Davis*,[14] we note that the Supreme Court was careful in that case to discuss governmental immunity specifically in the context of "limiting the imposition of tort liability on a government agency."[15] Roberts has aptly pointed out that his claim for injunctive relief, directing the Board to comply with the statute, sounds in equity rather than in tort. We note also that the doctrine of governmental immunity was not invoked in a recent, factually-similar case from the Supreme Court.[16]

Roberts argues that the genuine issue of material fact which should have barred the grant of the motion for summary judgment is whether he was unsuitable for employment in the District. Roberts acknowledges that the superintendent may determine that a certified teacher is not "qualified" pursuant to 16 KAR 2:120. He nonetheless argues that the Board never informed him he was "unsuitable" and that this term was only used after he made his allegation that the Board had acted in violation of KRS 161.100. Roberts contends that the evidence establishes that there is a genuine issue of material fact regarding his qualifications. He points out that the investigation into the student complaints did not lead to disciplinary action against him. He warns that if complaints by students were sufficient to disqualify certified teachers from further employment, every teacher in the district could be subject to dismissal. In his view, a jury should have been permitted to determine whether he was unsuitable for appointment.

■ Roberts has provided no evidence, however, to suggest that the superintendent abused her discretion in determining that he was not a qualified candidate, nor that the Board violated KRS 161.100 by implementing her recommendations. "[A] party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial."[17]

11. *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky. App.1996).

12. *Commonwealth, Dept. of Highways v. Richardson,* 424 S.W.2d 601, 603 (Ky.1968).

13. *Id.*

14. 65 S.W.3d 510 (Ky.2001).

15. *Id.* at 519, *quoting* 57 Am.Jur.2d *Municipal, County, School and State Tort Liability* § 10 (2001).

16. *See Young v. Hammond,* 139 S.W.3d 895 (Ky.2004), in which a teacher sued her superintendent and school board for violating KRS 160.345 by refusing to forward her application for a principalship to the district council.

17. *Hubble v. Johnson,* 841 S.W.2d 169, 171 (Ky.1992).

In fact, the record is replete with evidence that Roberts could indeed be found unsuitable for appointment: the student complaints of harassment; the findings of the Certified Evaluation Appeals Board that the investigation concerning his final summative evaluation should be continued; and the recommendation by Principal McKenzie that he not be rehired. Roberts has simply failed to produce some affirmative evidence that the superintendent abused her discretion in refusing to recommend Roberts to the Board for appointment. As the circuit court aptly stated,

Roberts has not alleged in his Verified Complaint that the superintendent failed to have documented evidence supporting a finding he was unsuitable for employment. His resignation was submitted in the face of knowledge his immediate supervisor had recommended he not be renewed for employment and upon learning of his likely receipt of a notice of non-renewal based upon the events during the 2001–02 school year. This documentation which recommended against contract renewal certainly was sufficient for the superintendent to determine Roberts was "unsuitable for appointment" despite having a teaching certificate and was therefore not a qualified teacher as used and defined in KRS 161.100. Roberts has failed to state a claim under KRS 161.100. That being the sole cause of action alleged in the Verified Complaint, Board is entitled to judgment as a matter of law and the Verified Complaint be dismissed.

Roberts voluntarily resigned his position, on the understanding that his principal's recommendation that his contract not be renewed would prevent him from getting another teaching position in the Fayette district. By resigning, he believed he had preserved his opportunity to be employed by another school in the district. Had he not resigned, however, he could have requested the superintendent to provide the grounds upon which the recommendation of nonrenewal was based, pursuant to KRS 161.750, which states in pertinent part:

(1) Any teacher employed under a limited contract may be reemployed under the provisions of KRS 161.720 to 161.810 for the succeeding school year at the same salary, . . . upon notification of the board by the superintendent of schools that the contract of the teacher is renewed.

(2) If the superintendent does not renew the contract he shall present written notice to the teacher that the contract will not be renewed no later than April 30 of the school year during which the contract is in effect. **Upon receipt of a request by the teacher, the superintendent shall provide a written statement containing the specific, detailed, and complete statement of grounds upon which the nonrenewal of contract is based.**[18]

Had the superintendent failed to produce such a written statement, Roberts would have had a potential cause of action to enforce the provisions of KRS 161.750(2).[19] As it is, Roberts appears to have no statutory right to learn the superintendent's reasons for not recommending him. As the circuit court noted, "Roberts did not have tenure. He had no expectation of employment after he resigned. No contract or right to contract existed between Roberts and the Board." We look to the case of *Bowlin v. Thomas*,[20] in

18. Emphasis supplied.

19. *See Phillips v. Board of Ed. of Muhlenberg Cty.*, 580 S.W.2d 730 (Ky.App.1979).

20. 548 S.W.2d 515 (Ky.App.1977) (superseded by *Phillips, supra* note 19, at 732; under KRS 161.750, a later statute, Bowlin would have had the right to a written statement from

which a non-tenured teacher who was not rehired argued that the school board had acted arbitrarily in failing to re-employ him, and that he was entitled to a judgment reinstating him as a teacher. We stated that "[i]f Bowlin had been a tenured teacher serving under a continuing contract, the school board could have terminated his contract only for certain statutory causes."[21] But because Bowlin was not tenured, he had no constitutional right to a statement of the reasons for the school board's decision not to re-hire him for the next school year, or a right to a hearing to contest that decision.[22]

█ Furthermore, as in Bowlin's case, Roberts has not alleged that the decision not to employ him was based on a constitutionally-prohibited reason, such as race, sex, religion, place of birth, exercise of the right of free speech or because of his political activities. So long as it is not based upon a constitutionally impermissible reason, a decision to terminate the employment of a public officer or employee does not raise any issue of arbitrariness.[23]

Because Roberts has failed to provide any material facts to support his contention that the Board violated KRS 161.100, and because his status in relation to the Board does not implicate any constitutional concerns, or entitle him to any statutory relief, the judgment is affirmed.

ALL CONCUR.

█

the superintendent containing the grounds upon which the nonrenewal of his contract was based. Unlike Roberts, however, Bowlin had not resigned).

21. *Id.* at 518.

22. *Id.*

23. *Id.* at 519.