RENDERED: AUGUST 20, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0435-MR


CHRIS ARMSTRONG                                           APPELLANT


|  | APPEAL FROM FAYETTE CIRCUIT COURT |
|---|---|
| v. | HONORABLE KIMBERLY N. BUNNELL, JUDGE |
|  | ACTION NO. 17-CI-04343 |


THE ESTATE OF STAR IFEACHO,
BY AND THROUGH THE ADMINISTRATOR
OF HIS ESTATE, PEACE IFEACHO; AND
PEACE IFEACHO INDIVIDUALLY                    APPELLEES

AND

NO. 2020-CA-0436-MR


PEACE IFEACHO, INDIVIDUALLY AND
AS ADMINISTRATRIX OF THE ESTATE
OF STAR IFEACHO                                   APPELLANTS


|  | APPEAL FROM FAYETTE CIRCUIT COURT |
|---|---|
| v. | HONORABLE KIMBERLY N. BUNNELL, JUDGE |
|  | ACTION NO. 17-CI-04343 |

CODY BEGLEY, IN HIS
INDIVIDUAL CAPACITY                                                    APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

\*\* \*\* \*\* \*\* \*\*

BEFORE:  CLAYTON, CHIEF JUDGE; K. THOMPSON AND L. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE:  Chris Armstrong ("Armstrong") appeals from the Fayette Circuit Court's order denying his motion for summary judgment on the grounds that he was not entitled to either qualified official immunity or statutory immunity under Kentucky Revised Statutes ("KRS") 411.148 or KRS 311.668 from the negligence claims asserted against him by the Estate of Star Ifeacho (the "Estate") and Peace Ifeacho ("Peace").

Additionally, the Estate and Peace appeal from the Fayette Circuit Court's order granting Cody Begley's ("Begley") motion for summary judgment on the grounds that he was entitled to both qualified official immunity and statutory immunity under KRS 411.148 and KRS 311.668 from the negligence claims asserted against him by the Estate and Peace.

Upon review of the applicable facts and case law, we affirm the trial court's opinion and order as to Begley's entitlement to qualified official immunity

but agree with Armstrong that he was also entitled to summary judgment based on qualified official immunity. Accordingly, we reverse the Fayette Circuit Court's opinion and order insofar as it denies Armstrong's motion for summary judgment and remand this matter with instructions to enter judgment in favor of Armstrong based upon qualified official immunity.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 2017, Star Ifeacho ("Star"), a sophomore enrolled at Paul Laurence Dunbar High School ("Dunbar"), attended an after school basketball "open gym." Armstrong, a teacher and assistant boys' basketball coach, was present at the open gym to supervise the participating students and to provide instruction and feedback.

During the open gym, Star complained to other students that he was having trouble breathing, describing it as feeling as though he had asthma. Thereafter, Star went to the athletic trainers' office to speak with Begley, an athletic trainer who worked at Dunbar pursuant to a contract with Fayette County Public Schools ("FCPS") through the University of Kentucky's Department of Orthopedic Surgery & Sports Medicine (the "Contract"). The Contract provided athletic trainer coverage for athletic activities sanctioned by the Kentucky High School Athletic Association ("KHSAA"), as well as athletic training services to all athletes of any interscholastic sport offered at each high school.

Specifically, Star complained to Begley that his heart was racing. As Star turned to leave the trainers' office, he turned back to Begley, stated, "it's doing it," and then collapsed. Begley went to Star's side, rolled him onto his back, and checked his breathing and pulse. Thereafter, Begley instructed a football player who had been in Begley's office receiving shoulder treatment to call 911. Begley also began applying cardiopulmonary resuscitation ("CPR") to Star and instructed another student to find a coach. Armstrong entered the trainers' office, knelt down to assist Begley, and grabbed Star's hand. Begley asked Armstrong to remain with him to assist, if necessary.

Begley instructed one of those students to call another athletic trainer, Gabrielle Sombelon, who had taken the only portable automated external defibrillator ("AED") with her to an in-season baseball practice. An AED is a medical device used to help those experiencing sudden cardiac arrest by analyzing the heart's rhythm and, if necessary, delivering an electrical shock – or defibrillation – to help the heart re-establish an effective rhythm. According to the FCPS policy concerning the placement of AEDs in a building, "[t]he optimal response time is three (3) minutes or less . . . . Survival rates decrease by 7-10% for every minute defibrillation is delayed."

When Sombelon did not initially answer her phone, Begley instructed two other students to retrieve another AED located in the school's foyer,

-4-

approximately 325 feet from the trainers' office. Once the students arrived with the AED, Begley applied the AED's leads to Star and delivered a shock when prompted by the AED. The AED then prompted Begley to resume providing CPR. Before Begley could deliver a second shock, the Lexington Fire Department arrived and assumed resuscitation efforts. Star was transported to the University of Kentucky Emergency Department but was unfortunately unable to be revived and passed away.

The Estate and Star's mother Peace, in her individual capacity, brought an action in Fayette Circuit Court against several of Dunbar's and FCPS's coaches and administrators, including Armstrong and Begley, in both their individual and official capacities. The trial court ultimately dismissed all official capacity claims against both Armstrong and Begley, leaving only the individual claims.

Specifically, the Estate and Peace claimed that Armstrong was required under FCPS policies to immediately retrieve an AED. Similarly, the Estate and Peace claimed that Begley was negligent in having a student attempt to contact Sombelon to bring the portable AED to the training room rather than immediately sending a student to obtain the other AED in the foyer.

After a hearing, the Fayette Circuit Court denied Armstrong's motion for summary judgment, finding that the Estate's claims against Armstrong were

based on ministerial acts and therefore that qualified immunity was not applicable. Additionally, the trial court found that Armstrong was not immune under either KRS 311.668 or KRS 411.148 – Kentucky's AED and Good Samaritan statutes – because he was not engaged in Star's medical treatment.

The trial court granted Begley's summary judgment motion, finding both that the Estate's claims against him were based on discretionary acts and that he was immune under Kentucky's AED and Good Samaritan statutes. Both Armstrong and the Estate filed timely appeals, and the two appeals were consolidated.

Further facts will be discussed as they become relevant to the issues discussed in this Opinion.

## ISSUES

On appeal, Armstrong argues that (1) the trial court erred in denying qualified immunity to Armstrong based on its determination that the acts involved were ministerial in nature and (2) the trial court erred in denying Armstrong statutory immunity under either or both KRS 311.668 or KRS 411.148. The Estate and Peace argue on appeal that (1) the trial court erred in granting Begley qualified immunity and (2) the trial court erred in granting Begley statutory immunity under KRS 311.668 and KRS 411.148.

## ANALYSIS

### a. Standard of Review

These matters are properly before this Court as interlocutory appeals on a question of qualified and statutory immunities. Summary judgment is generally appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure ("CR") 56.03. The Kentucky Supreme Court has also held that summary judgment is proper "where the movant shows that the adverse party cannot prevail under any circumstances." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 479 (Ky. 1991).

In either case, "a party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial." *Hubble v. Johnson*, 841 S.W.2d 169, 171 (Ky. 1992) (citation omitted). A "trial court must then view the record 'in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor.'" *Rowan County v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006) (quoting *Steelvest*, 807 S.W.2d at 480).

In the context of qualified official immunity, "[s]ummary judgments play an especially important role as the defense renders one immune not just from liability, but also from suit itself." *Ritchie v. Turner*, 559 S.W.3d 822, 830 (Ky. 2018) (internal quotation marks and citations omitted). An appeals court reviews the issue of whether a school official is entitled to qualified official immunity *de novo*. *Id*. (citation omitted).

### b. Discussion

### 1. Qualified Official Immunity as to Armstrong

Armstrong first argues that the trial court erred in denying him qualified immunity based on its determination that the acts involved were ministerial in nature. As the Kentucky Supreme Court explained in *Yanero v. Davis*, when an officer or employee of the state or county is sued in his or her individual capacity, that officer or employee is often entitled to qualified official immunity, "which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." 65 S.W.3d 510, 522 (Ky. 2001) (citation omitted). The application of qualified immunity "rests not on the status or title of the officer or employee, but on the function performed." *Id*. at 521 (citation omitted). Specifically, "the analysis depends upon classifying the particular acts or functions in question in one of two ways: discretionary or ministerial." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010).

As explained in *Haney*:

> Discretionary acts are, generally speaking, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment. It may also be added that discretionary acts or functions are those that necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one or two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Id.* (internal quotation marks and citations omitted).

On the other hand, qualified immunity does not protect one who negligently performs, or fails to perform, a ministerial duty. "A ministerial duty is one that requires only obedience to the orders of others." *Patton v. Bickford*, 529 S.W.3d 717, 724 (Ky. 2016), *reh'g denied* (Aug. 24, 2017) (internal quotation marks and citation omitted). "The act of 'governing cannot be a tort, but failing to carry out the government's commands properly when the acts [to be performed] are known and certain can be.'" *Id.* (quoting *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014) (brackets as per *Patton*)). Put another way, "a duty is ministerial when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (internal quotation marks and citation omitted).

Here, the Estate argues that the FCPS's Protocol For Using Medtronic LifePak CR Plus Automated External Defibrillator (the "Protocol") imposed a ministerial duty on Armstrong to retrieve an AED. The Protocol states, in applicable part:

> **After School Hours:**
>
> Neither the Fayette County Board of Education nor any of its members, agents, or employees assume liability for the rendering of care or use of an AED after normal business/school hours.
>
> 1. Athletic trainer-covered events:
>
>    a) Confirm unresponsiveness of victim.
>
>    b) Activate system:
>
>       - At any school, public, or cellular phone, **DIAL 9-1-1** or other local emergency number.
>
>       - Alert athletic staff of emergency by sending a runner to inform athletic trainer, athletic director or field/gym manager.
>
>    c) If present, the athletic trainer or a designee will retrieve the AED.
>
>    d) If a CPR and/or AED trained individual is available, CPR and AED procedures should be initiated until EMS arrives.
>
>    e) Follow procedures outlined above in the section titled During School Hours, starting with Paragraph 4a.

2. Other school events (if an AED is available):

    a) Confirm unresponsiveness of victim.

    b) Activate system:

        - At any school, public, or cellular phone, **DIAL 9-1-1** or other local emergency number.

        - Alert the supervising staff member of the emergency.

    c) *If CPR + AED trained, supervising staff will retrieve the AED.* CPR and AED procedures should be initiated until EMS arrives.

    d) Follow procedures outlined above in the section titled During School Hours, starting with Paragraph 4a. [CPR-trained individual(s) will assess the emergency and, if needed, begin CPR until the AED arrives: [gives procedure for CPR].

Thus, the issue before us is whether the language contained in the Protocol imposed a ministerial duty on Armstrong to retrieve the AED, or whether his decision was a "good faith judgment call[] *made in a legally uncertain environment*." *Haney*, 311 S.W.3d at 240 (quoting *Yanero*, 65 S.W.3d at 522) (emphasis per *Haney*) (other citation omitted).

As set out above, the Protocol instructs that certain actions must be taken when presented with an unresponsive victim: confirm the unresponsiveness of the victim, call 911, alert athletic and/or supervising staff, retrieve an AED, and follow CPR and AED procedures until EMS arrives. We conclude that it was

-11-

mandatory and ministerial that the foregoing basic tasks be completed. However, the exact manner or timeline for how these tasks were to be completed was discretionary. So long as these tasks were being undertaken by someone with the appropriate training to perform them, duplicative efforts were not required. The most important thing under the Protocol was that the AED be retrieved and used, which is what was done in this case.

In particular, a review of the Protocol indicates that whomever is required to retrieve the AED during a particular event depends upon whether such event is considered an "athletic trainer-covered event" or an "other school event." While the trial court ultimately – and correctly – concluded that the open gym was an "other school event," Armstrong could justifiably have believed at the time that it was an "athletic trainer-covered event" simply because Begley was present and was already in the process of rendering the mandated aid. Indeed, Armstrong entered the training room *after* Star had collapsed and Begley had already taken charge of Star's emergency care. Moreover, it is undisputed that Begley had far more medical training than Armstrong, as Begley was both an athletic trainer and a certified EMT, while Armstrong only had CPR and AED training. There is no doubt that Armstrong was aware that Begley had more expertise in rendering aid than did Armstrong. Under these circumstances, Armstrong was justified in

-12-

believing that Begley or his "designee" would both retrieve the AED and utilize the AED, which is in fact what ultimately occurred.

Here, Armstrong responded to an in-progress situation already being managed in which appropriate care was being rendered (as the Estate concedes in every respect but for the prompt retrieval of the AED) and students were being designated to perform other tasks. There is no doubt that Armstrong was prepared to render aid and was in a position to render aid by remaining by Star's side. Therefore, so long as Begley's aid was appropriate, Armstrong cannot be faulted for using his discretion in declining to wrest control from an individual with superior training and experience.

Further, we disagree with the Estate that the language stating "[i]f CPR + AED trained, supervising staff will retrieve the AED" means that Armstrong was required to retrieve the AED himself. It strains logic for the Estate to maintain that Armstrong had to retrieve the AED from outside the office itself, rather than allow Begley to assign the task of obtaining an AED to a student. Additionally, under the Estate's reasoning, Armstrong was mandated to retrieve an AED device even if Begley had already obtained one. Considering that the guidance for whether Begley or Armstrong was in charge of this particular setting was likely confusing at that moment, Armstrong acted appropriately in deferring to Begley in this in-progress emergency given their relevant training and experience.

It would be exceedingly unproductive in managing an emergency situation for Begley and Armstrong to be debating who should be in charge and who should perform which action.

Furthermore, we disagree with the Estate that a specific ministerial duty existed to obtain the AED device within a set period of time. While the Estate references guidance regarding the placement of AED devices which suggests each area of the school should have a unit available within a three-minute distance and provides authority as to the diminishing effectiveness of an AED if applied beyond a three to four-minute window, this guidance and authority does not graft onto the Protocol a mandatory duty to retrieve a device within three minutes. We do not believe Armstrong had the mandatory ministerial duty to obtain the AED within an exact time frame. Rather, Armstrong made a judgment call "in a legally uncertain environment" when determining that it was more appropriate for him to remain nearby and prepared to assist Begley in any manner requested – including potentially taking over the performance of CPR, a duty mandated under the Protocol if Begley became too tired to continue – rather than seeking out an AED when a student at Begley's direction was already attempting to obtain it. *Yanero*, 65 S.W.3d at 522. Certainly, while at some point the failure to seek out or obtain an AED could potentially violate the Protocol, we do not believe that a factual issue was raised in this regard given the timeline of events.

Thus, we reverse the trial court's order denying Armstrong's motion for summary judgment and instruct the court to enter a new order granting Armstrong summary judgment on the basis of qualified immunity.

Additionally, because we have determined that Armstrong is entitled to qualified immunity, we decline to address whether Armstrong had statutory immunity under either KRS 311.668 or KRS 411.148.

## 2. **Qualified Immunity as to Begley**

The Estate and Peace argue on appeal that the trial court erred when it found that Begley was immune to their claims based on qualified immunity. Specifically, the Estate and Peace first argue that because the case of *Gould v. O'Bannon*, 770 S.W.2d 220, 222 (Ky. 1989), states that "[t]he administration of medical care is a ministerial function by employees, including doctors[,]" Begley's functions that day were purely ministerial. This situation, however, is distinguishable. The Estate and Peace conceded that there was no allegation that Begley negligently administered the AED or that he was negligent in performing CPR on Star. Therefore, it was not Begley's rendering of medical care that was the basis of the claim, but rather Begley's decision-making process in determining how to retrieve the AED in this emergency situation. Such process included instructing others present on how to proceed, assigning the responsibility for retrieving the AED by designating other individuals to carry out that task, and how

long to wait before designating different individuals to retrieve a different AED. We agree with the trial court that the foregoing actions were clearly discretionary in nature. As a result, *Gould* is inapplicable.

Additionally, the Estate argues that Begley's actions were ministerial based on a 2015 Emergency Action Plan ("EAP"), which provided that "[t]he person in charge will designate someone to gather any emergency equipment necessary for the situation." In this case, however, the EAP is not applicable to an open gym, but only to KHSAA-sanctioned games and practices. Additionally, although the EAP made it mandatory for Begley to designate someone to retrieve the AED, his exercise of that discretion in who to designate, which AED to instruct that designee to retrieve, and how long to wait prior to designating someone else to retrieve an alternate AED were not specified by the EAP and instead remained in Begley's discretion. Moreover, Begley did, in fact, comply with his duty by instructing the two high school students to retrieve the AED from the foyer, an instruction with which they ultimately complied. We see Begley's actions to be discretionary in this case, and we therefore affirm the trial court's determination that he is entitled to qualified immunity.

Because we have determined that the trial court did not err in granting Begley qualified immunity and properly dismissed the claims against Begley, we

decline to address whether Begley had statutory immunity under either KRS 311.668 or KRS 411.148.

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse and remand in part with instructions to enter judgment in favor of Armstrong based upon qualified official immunity.

ALL CONCUR.

BRIEFS FOR CHRIS ARMSTRONG:

John G. McNeill
Elizabeth A. Deener
Lexington, Kentucky

ORAL ARGUMENT FOR CHRIS ARMSTRONG:

Elizabeth A. Deener
Lexington, Kentucky

BRIEF FOR CODY BEGLEY:

Donald P. Maloney, II
Andrew D. DeSimone
Donald C. Morgan
William E. Thro
Margaret M. Pisacano
Lexington, Kentucky

ORAL ARGUMENT FOR CODY BEGLEY:

Donald P. Maloney, II
Andrew D. DeSimone
Donald C. Morgan
Lexington, Kentucky

BRIEF FOR PEACE IFEACHO, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF STAR IFEACHO:

Sheila P. Hiestand
Louisville, Kentucky

ORAL ARGUMENT FOR PEACE IFEACHO, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF STAR IFEACHO:

Sheila P. Hiestand
Jarret Smith
Louisville, Kentucky