RENDERED: SEPTEMBER 16, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0327-MR

RICK HOLMAN                                                          APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.            HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 17-CI-01664

ESTATE OF TYLER WILLIAMS,
BY AND THROUGH MEGAN WILLIAMS,
AS ADMINISTRATRIX; KARSON HOLLAR;
L-M ASPHALT PARTNERS, LTD D/B/A ATS
CONSTRUCTION; ADALEY WILLIAMS;
CARTER WILLIAMS; AND
MEGAN WILLIAMS, INDIVIDUALLY                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:   ACREE, CETRULO, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Rick Holman ("Appellant") appeals from an

interlocutory order of the Fayette Circuit Court denying his motion for summary

judgment. Appellant argues that the circuit court erred in failing to properly apply *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), to conclude that Appellant is entitled to qualified official immunity. After careful review, we affirm the order on appeal.

## FACTS AND PROCEDURAL HISTORY

L-M Asphalt Partners, Ltd., d/b/a ATS Construction ("ATS"), contracted with the Kentucky Transportation Cabinet ("KYTC") to perform road work on the Todd's Road Project in Lexington, Kentucky. KYTC employee Robert Johnson was responsible for overseeing the project, supervising construction, and ensuring the overall safety on the project including Occupational Safety and Health Administration ("OSHA") compliance. Appellant was the KYTC on-site inspector for the project and Mr. Johnson's designee. Appellant's responsibilities included completion of the project in compliance with state and federal safety laws and regulations. Appellant had the authority to stop work on the project if he observed unsafe conditions.

On the morning of May 4, 2016, Appellant was at the Todd's Road Project site when he saw ATS employee Tyler Williams climb out of a trench in the ground that was approximately 13 feet deep. The trench had been excavated for the purpose of laying a drainage pipe. Appellant determined that the trench needed cave-in protection, and after Williams exited the trench, Appellant

-2-

commented that "it looks like there needs to be a trench box in there to me."[1] Appellant did not prevent Williams from re-entering the trench. Williams entered the trench, which collapsed on him resulting in his death.

Thereafter, Williams' estate, Williams' wife, Megan, their two children, and Megan's child from a prior relationship filed a negligence action against Appellant and Johnson as a result of Williams' death. The matter proceeded in Fayette Circuit Court, whereupon Appellant and Johnson filed a joint motion for summary judgment. In support of the motion, they claimed entitlement to qualified official immunity, argued that there was no breach of a duty, and that Megan's child from the prior relationship, Karson Hollar, failed to state a claim upon which relief could be granted.

On March 10, 2021, the Fayette Circuit Court entered an order granting in part and denying in part the motion for summary judgment. The court determined that pursuant to *Yanero*, *supra*, Johnson's duty to immediately halt work on a dangerous project was discretionary as he was a supervisor who was not present at the project when the trench collapsed. As such, the circuit court concluded that Johnson was shielded by qualified official immunity. The court sustained the motion for summary judgment as to Karson Hollar's claim of loss of parental consortium, as Williams was not the child's biological nor adoptive father.

---

[1] A trench box is a steel structure designed to prevent the walls of a trench from caving in.

In examining the motion as to Appellant, the circuit court found that Appellant had the same duty as Johnson to stop work on the project if he observed an imminent danger. This duty derived from various provisions of KYTC's Construction Guidance Manual, as well as KYTC's Standard Specifications, which required Appellant to suspend work immediately if he recognized an imminent danger. The court determined that because Appellant was present at the site, and observed a dangerous condition (a deep trench with no trench box), Appellant's duty to act was ministerial and did not require deliberation or analysis. Per *Yanero*, and having found that Appellant's duty was ministerial, the court concluded that Appellant was not entitled to qualified official immunity. This interlocutory appeal followed.

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary

judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id.* "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

## ARGUMENTS AND ANALYSIS

Appellant argues that he is entitled to qualified official immunity as a matter of law, and that the Fayette Circuit Court incorrectly determined that a Construction Guidance Manual imposed on him a ministerial rather than discretionary duty. He argues that the challenged conduct involved him exercising personal judgment in a matter of seconds and was, therefore, discretionary in nature. He asserts that while the manual sets out both discretionary and ministerial duties, Construction Guidance Manual section CST-111-4 provides KYTC officials with discretionary authority. Appellant asserts that deciding when to inspect and when enough information is available is a discretionary matter, that public policy favors a finding of qualified official immunity, that he was acting within the scope of his authority and that there was no basis for finding bad faith

per *Yanero*. He seeks an opinion reversing the order on appeal and a finding that

he is entitled to qualified official immunity.

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity . . . . Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled . . . . But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith; and (3) within the scope of the employee's authority. An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed. Qualified official immunity is an affirmative defense that must be specifically pled.

*Yanero*, 65 S.W.3d at 521-22 (citations omitted).

> [D]iscretionary acts or functions are those that necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the

-6-

> performance of an act arises when the act may be performed in one or two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010) (citation omitted).

In contrast, qualified official immunity does not protect one who negligently performs, or fails to perform, a ministerial duty. "A ministerial duty is one that requires only obedience to the orders of others." *Patton v. Bickford*, 529 S.W.3d 717, 724 (Ky. 2016), *as modified on denial of reh'g* (Aug. 24, 2017) (internal quotation marks and citation omitted). "The act of governing cannot be a tort, but failing to carry out the government's commands properly when the acts [to be performed] are known and certain can be." *Id.* (internal quotation marks and citation omitted). Stated differently, "a duty is ministerial when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (internal quotation marks and citation omitted).

> Categorizing actions as either the performance of a discretionary duty or the performance of a ministerial duty is vexing to litigants and courts alike. . . . A somewhat rudimentary expression of the distinction between discretionary and ministerial acts provides that [p]romulgation of rules is a discretionary function; enforcement of those rules is a ministerial function.

*Id.* (internal quotation marks and citation omitted).

The primary question for our consideration is whether the Fayette Circuit Court properly determined that Appellant's duty was ministerial rather than discretionary. The KYTC Construction Guidance Manual provides in relevant part that Appellant had a duty to immediately suspend work when a recognized danger is considered to be imminent. CTS-111-4, *et al.* "Imminent danger is any situation or condition occurring on a construction project that, in the opinion of the SE [Section Engineer], may result in serious injury or death to construction personnel or the public." CTS-111-4.

A panel of this Court has previously held that the duty to immediately suspend work upon recognition of an imminent danger per KYTC's Construction Guidance Manual is a ministerial duty. In *Meredith v. Decker*, No. 2016-CA-000721-MR, 2018 WL 4054940 (Ky. App. Aug. 24, 2018), the employee of a subcontractor working on a KYTC project was killed when the form used to pour a concrete retaining wall collapsed. The decedent's estate sued several KYTC engineers in their individual capacities for negligence resulting from their alleged breach of duty per the Construction Guidance Manual to suspend work after recognizing an immediate danger. In considering their claim of entitlement to qualified official immunity, the Barren Circuit Court rejected their immunity arguments upon determining that the KYTC engineers' duty was ministerial. It based this finding in part on the mandatory "shall" language of the Construction

-8-

Guidance Manual creating the duty. Upon finding the duty to be ministerial rather than discretionary, the circuit court concluded that *Yanero* did not allow for the application of qualified official immunity under the facts before it.

Similarly, in the matter at bar, Appellant had a mandatory duty to suspend work if he recognized an immediate danger. Appellant's deposition testimony establishes that he recognized the immediate danger when he stated just before the accident that "it looks like there needs to be a trench box in there to me." It is uncontroverted that he observed the 13 foot deep trench with unsupported walls. Because Appellant had a mandatory duty to suspend work when the imminent danger was recognized, and as this duty did not implicate "the exercise of discretion and judgment, or personal deliberation, decision, and judgment," *Yanero*, 65 S.W.4d at 552, we conclude that the duty was ministerial rather than discretionary. The remaining elements of *Yanero*, *i.e.*, whether the public officer or employee acted in good faith and within the scope of his authority, are moot. We are not persuaded by Appellant's argument that public policy considerations favor a finding that Appellant's duty was discretionary rather than ministerial.

This decision addresses only whether Appellant's duty was ministerial or discretionary, and the resultant application, if any, of qualified official immunity. We do not address whether Appellant breached his duty, nor whether

there was any proximate causation or damages. "[A]n appellate court reviewing an interlocutory appeal of a trial court's determination of a defendant's immunity from suit is limited to the specific issue of whether immunity was properly denied, nothing more." *Baker v. Fields*, 543 S.W.3d 575, 578 (Ky. 2018).

## <u>CONCLUSION</u>

Per *Yanero*, Appellant's duty to suspend work upon recognizing an imminent danger was ministerial rather than discretionary. As such, he is not entitled to qualified official immunity. The Fayette Circuit Court properly denied Appellant's motion for summary judgment on this issue. Accordingly, we affirm the order of the Fayette Circuit Court denying Appellant's motion for summary judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

James G. Womack
Joshua L. Ellis
Sami C. Oudeh
Lexington, Kentucky

BRIEF FOR APPELLEES:

Jennifer A. Moore
Emily A. DeVuono
Louisville, Kentucky