RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1161-MR

CAROL SATTLER AND GERALD
SATTLER                                                                        APPELLANTS

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE JENNIFER WILCOX, JUDGE
ACTION NO. 15-CI-004923

VANESSA D. BURNS; CATHY
DUNCAN; CLARK WILLIAMS;
DANIEL O'DEA; DENNIS ARTHUR;
GREG HICKS, SR.; MARK
ZOELLER; SEVE GHOSE; AND TIM
MAIER                                                                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND LAMBERT, JUDGES.

COMBS, JUDGE: This case involves a claim for personal injury filed against a

variety of public officials asserting qualified official immunity as a defense. Carol

and Gerald Sattler appeal two orders of the Jefferson Circuit Court granting

summary judgment to various Louisville Metro Government ("Metro

Government") employees.  The Sattlers contend that the summary judgments must be reversed because they were entered before the Sattlers were given a full opportunity to conduct discovery.  In the alternative, they contend that the circuit court erred by concluding that some of the defendants owed the Sattlers no duty of care and that others were entitled to qualified official immunity.  After our review, we affirm the summary judgments.

On December 2, 2014, Carol Sattler tripped and fell on a broken, loose, or uneven paver while walking along the Belvedere at the riverfront in downtown Louisville.  In September 2015, she and her husband, Gerald, filed a personal injury action in Jefferson Circuit Court against unknown defendants believed to be employees of Louisville Metro Government.  They also filed a subpoena *duces tecum* aimed at discovering maintenance activities undertaken at the Belvedere.

On December 1, 2015, the Sattlers filed an amended complaint naming as defendants -- in their individual and official capacities -- the following Metro Government employees:  Vanessa D. Burn, Seve Ghose, Mark Zoeller, Greg Hicks, Sr., Tim Maier, and Daniel O'Dea.  The action against them was based upon their positions within Metro Government's Department of Public Works. The Sattlers also named Cathy Duncan as a defendant in her individual and official capacity.  Duncan is the Metro Government's Director of Offices of Facilities and

Fleet Management. She does not play a role in Public Works and Assets. Finally, the Sattlers named the Waterfront Development Corporation as a defendant.

In a second amended complaint, the Sattlers named additional defendants in their individual and official capacities: Dennis Arthur and Clark Williams. They are also employees of Metro Government's Department of Public Works. The Sattlers alleged that all the defendants "were negligent in their ownership, occupancy, maintenance, operation, care, management, repair, service, inspection and/or control" of the Belvedere. Several months later, the action against Waterfront Development Corporation was dismissed by the court on the basis of sovereign immunity. The Sattlers do not appeal the order dismissing Waterfront Development Corporation.

Represented by an assistant Jefferson County attorney, the remaining defendants answered and denied the allegations asserted against them. They contended that they were entitled to qualified official immunity from the lawsuit and any associated damages. A period of discovery began.

In October 2017, Seve Ghose, Director of Louisville Parks and Recreation, filed a motion for summary judgment. He contended that he was entitled to judgment as a matter of law because he was not employed with Metro Government until September 2015 -- many months after Sattler's fall. The circuit

court eventually granted summary judgment to Seve Ghose in August 2023. The Sattlers do not appeal the judgment entered in his favor.

In November 2017, Cathy Duncan and Vanessa Burns, Director of Public Works and Assets, filed motions for summary judgment. In their affidavits, Burns and Duncan stated, in part, that they had no personal knowledge of the incident; that inspection and/or maintenance of the Belvedere was not part of their work; and that no statute, regulation, policy, or procedure required them to inspect or maintain the Belvedere.

In January 2018, Zoeller, Assistant Director of Facilities and Project Management, a subdivision of Public Works, was deposed as a representative of Metro Government. The six remaining defendants, collectively, filed a motion for summary judgment in July 2018.

In January 2019, the circuit court granted summary judgment to Burns and Duncan. It noted that the evidence of record indicated that the Division of Facilities and Project Management is the unit of Public Works responsible for maintenance of the Belvedere. The court concluded that there was no evidence to indicate that either Burns or Duncan oversaw or maintained the Belvedere or had any duty of care whatsoever with respect to the Sattlers. It granted them summary judgment.

With respect to the six remaining defendants, the court concluded that "without any evidence of record as to what their specific responsibilities are, there remain genuine issues of material fact that would make it *possible*, as a practical matter, for the Sattlers to prevail." Anticipating that it would be asked to revisit the issue, the court carefully summarized our jurisprudence with respect to qualified official immunity.

In February 2020, the court filed a notice of dismissal for lack of prosecution. Counsel filed a motion to alter, amend, or vacate, representing that discovery was active and ongoing. The court granted that motion.

In January 2021, the following six defendant renewed their motions for summary judgment: Ronald Williams, a former Facilities Maintenance Supervisor within the Division of Facilities and Project Management; Greg Hicks, a retired Assistant Director of Public Works in the Road Operations and Maintenance Division; Dennis Arthur, a Facilities Project Manager within the division of Facilities and Project Management; Mark Zoeller, Assistant Director of Facilities and Project Management; Tim Maier, District Operations Administrator for Public Works in the Road Operations and Maintenance Division; and Daniel O'Dea, a retired Assistant Director of Engineering Services for Public Works renewed their motions for summary judgment.

In August 2021, the circuit court granted summary judgment to Williams, Hicks, Arthur, Zoeller, Maier, and O'Dea. It concluded that there were no circumstances under which the Sattlers could prevail at trial on their claims against these defendants in their official capacities because each of them was entitled to the protections afforded by official immunity. Furthermore, it concluded that "[i[nsofar as the Road Operations and Maintenance Division, including [Hicks and Maier], is not responsible for performing any maintenance or repairs at the Belvedere," there is no evidence that either of them had a duty of care with respect to the Sattlers. Consequently, the court granted summary judgment to Hicks and Maier with respect to the claims asserted against them in both their individual and official capacities.

With respect to the claims against Zoeller, Arthur, Williams, and O'Dea in their individual capacities, the court concluded that as supervisors, these parties exercised their independent discretion and judgment concerning maintenance and repair decisions at the Belvedere. It disagreed that these supervisors were required to inspect the pavers personally to identify needed repairs or maintenance issues. It concluded that they were entitled to the protection afforded by qualified official immunity and granted them summary judgment. This appeal followed.

A motion for summary judgment should be granted:

> if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR[1] 56.03. "Because no factual issues are involved and only a legal issue is before the court on the motion for summary judgment, we do not defer to the trial court and our review is de novo." *Univ. of Louisville v. Sharp*, 416 S.W.3d 313, 315 (Ky. App. 2013) (citation omitted).

On appeal, the Sattlers argue first that entry of summary judgment is premature because they have not been provided with a full opportunity to conduct discovery into the various defendants' roles and responsibilities regarding maintenance of the Belvedere. They contend that they must be given an opportunity to cross-examine the employees about the claims and defenses. Under the circumstances, we disagree.

Each of the defendants submitted a sworn affidavit to the court. Each of the affidavits provided: the defendant's job title; an overview of the organizational structure (including the number of employees in each section); and a statement relative to the defendant's position within that structure. Each affidavit also included a comprehensive description of the defendant's responsibilities and specific job duties. Finally, each affidavit indicated that the defendant had no

---

[1] Kentucky Rules of Civil Procedure.

personal knowledge of the incident at the Belvedere; had no information concerning any issues with any of the pavers there; and had no responsibility personally to perform any maintenance at the Belvedere. Again, Zoeller provided further testimony in a deposition as the representative of Metro Government. This information was sufficient to enable the circuit court to decide whether any one of the defendants was entitled to judgment as a matter of law. Thus, we cannot agree that the circuit court's summary judgment was entered prematurely.

Next, the Sattlers argue that the circuit court erred by concluding that the defendants were entitled to qualified official immunity. Again, we disagree.

The defense of qualified official immunity must be examined with respect to whether the function at issue was discretionary or ministerial. Qualified official immunity applies to a negligent act or omission by a public employee for his or her:

> "(1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ; (2) in good faith; and (3) within the scope of the employee's authority."

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citing RESTATEMENT (SECOND) OF TORTS § 895D (1979)). However, qualified official immunity does **not** extend to the negligent performance of ministerial acts. *Id*.

In *Marson v. Thomason*, 438 S.W.3d 292 (Ky. 2014), the Kentucky Supreme Court observed that the distinction between ministerial and discretionary acts is often difficult to discern. A ministerial act is "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero*, 65 S.W.3d at 522. A ministerial act is one that the government employee must perform "without regard to his or her own judgment or opinion concerning the propriety of the act to be performed." 63C AM. JUR. 2D *Public Officers and Employees* § 318 (updated through Feb. 2014). A discretionary act is one "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Yanero*, 65 S.W.3d at 522.

The Sattlers contend that each of the Metro Government employees "had a contractual duty, *that is by definition ministerial in nature*," to maintain the Belvedere. (Emphasis added.) They rely upon the terms of a contract between the Waterfront Development Corporation and Metro Government executed on August 11, 2011. It requires Metro Government to "maintain the Belvedere property to include . . . structural maintenance." The Sattlers contend that the express terms of this agreement afforded the individual employees "no room for discretion." We disagree.

The terms of the agreement between Metro Government and Waterfront Development Corporation did not amplify, enhance, broaden, or in any way define the individual defendants' responsibilities at the Belvedere. The agreement simply provided for a sharing of Metro Government's financial, personnel, recordkeeping, budgeting, asset management, employee benefits, payroll, training, procurement, and technology services systems with Waterfront Development Corporation for the mutual benefit of both parties. With respect to public works and assets, the agreement provided that Waterfront Development Corporation would maintain Waterfront Park and all the buildings situated on the park grounds and that Metro Government would maintain the Belvedere property. The agreement did nothing to affect the specific responsibilities of any of the named defendants.

In December 2014, as Director of Offices of Facilities and Fleet Management, Cathy Duncan supervised assistant directors and managers of four divisions: Project Management, Operations, Security, and Landscaping. She also supervised an assistant director who oversaw activities in the Sedans and Heavy Truck/Equipment divisions. She had no responsibility for the maintenance of the Belvedere.

Vanessa Burns was the Director of Louisville Metro Public Works and Assets in December 2014. Public Works is responsible for solid waste

-10-

management, traffic signals, electrical maintenance, road maintenance, road signs and markings, and engineering. While sidewalks are included in road maintenance, Burns indicated that she had no responsibility for maintenance at the Belvedere.

As the District Operations Administrator for Public Works in the Road Operations and Maintenance Division, Tim Maier supervised three managers, who each oversaw four supervisors in December 2014. Greg Hicks has since retired as the Assistant Director of Public Works in the Road Operations and Maintenance Division. In December 2014, he supervised the Operations Administrator. The Division is responsible for road maintenance activities including paving, shoulder repair, drainage within the right of way, litter collection, guardrail repair, and tree maintenance. While the division performs maintenance on sidewalks abutting roads, it is not responsible for the Belvedere.

As Assistant Director of Engineering Services for Public Works, Daniel O'Dea supervised five managers who oversaw their respective supervisors. The unit's primary focus is roadways and sidewalks adjacent to roadways. In December 2014, O'Dea managed administrative support services; none of his subordinates was responsible for performing any structural maintenance -- including paver repair.

-11-

Mark Zoeller is the Assistant Director of Facilities and Project Management. The unit has approximately eighty (80) employees and manages approximately eighty-nine (89) Metro Government properties. In his affidavit, Zoeller indicated that in December 2014, he developed procedure, formulated policy, and prepared budgetary data. He determined the best means by which to operate Facilities and Project Management efficiently and effectively. He oversaw the Manager of Facilities and Project Management.

Dennis Arthur is a Facilities Project Manager. In December 2014, he supervised six construction coordinators who managed Metro Government projects by directing subordinates. He collected and analyzed data and prepared reports. He developed capital improvement plans and managed Facilities Management projects through subordinate engineers, construction coordinators, and architects. He oversaw project schedules and other logistical issues. His position required him to determine the best means necessary to ensure that projects, programs, and services operated efficiently and effectively.

In December 2014, Ronald Williams worked as a Facilities Maintenance Supervisor within the division of Facilities and Project Management. He supervised six (6) maintenance workers who responded to work order requests. He oversaw building and ground maintenance operations and mechanical and electrical repairs. He investigated equipment malfunctions, scheduled preventive

maintenance of equipment and systems, and prepared cost estimates and bid specifications. He did not personally perform maintenance at the Belvedere.

None of the defendants/appellees had duties involving mere obedience to the orders of others or execution of any specific act. Thus, their responsibilities cannot be characterized as ministerial in nature. Their acts required the exercise of discretion. Consequently, they were entitled to qualified official immunity.

We find no error in the conclusion of the Jefferson Circuit Court that the defendants were entitled to qualified official immunity. Therefore, we affirm its entry of summary judgments.


ALL CONCUR.


BRIEFS FOR APPELLANTS:                    BRIEF FOR APPELLEES:

William D. Nefzger                        Andrew Miller
David W. Mushlin                          Kristie Walker
Louisville, Kentucky                      Assistant Jefferson County Attorneys
                                          Louisville, Kentucky