RENDERED:  JUNE 12, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0006-MR

TIM PINSON, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY                                                    APPELLANT


                        APPEAL FROM MADISON CIRCUIT COURT
v.                      HONORABLE DAVID M. WARD, JUDGE
                        ACTION NO. 22-CI-00499


SAGE BAINTER                                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

COMBS, JUDGE:  Tim Pinson appeals an order of the Madison Circuit Court

rejecting his claim to qualified official immunity and denying his motion for

summary judgment.  After our review, we affirm.

On November 9, 2022, Sage Bainter filed a personal injury action

against Tim Pinson both in Pinson's individual capacity and in his official capacity

as a public-school teacher. Bainter sought compensatory damages for a serious injury he suffered to his hand during class time at the Madison County Area Technology Center (ATC) in Richmond. ATC is operated by the Kentucky Department of Education and offers career and technical education to high school students. Bainter's class was taught by Pinson, a welding instructor.

The complaint alleged that Bainter was injured when he -- along with four other male students -- was directed to move a heavy, scrap-metal plate from an outdoor scrapyard to the inside of the building for use at welding booths in the lab/workshop. Bainter alleged that Pinson was on the phone with his feet upon his desk in a separate classroom instead of supervising his students' conduct and that he (Bainter) and the others agreed to carry the scrap-metal plate only after being pressured and taunted by students whom Pinson had specifically charged to lead the class. When the students lost control of the metal plate, it fell to the floor, crushing Bainter's hand beneath it.

Bainter alleged that Pinson had a duty to exercise reasonable care for his safety and that Pinson breached that duty by failing to supervise his students in accordance with established policies and procedures. Bainter alleged that he suffered injury as a direct result of Pinson's decision to leave his students unsupervised while they were directed to undertake a hazardous task.

Pinson answered the complaint, denying any liability for Bainter's injury. Some weeks later, he filed a motion to dismiss the complaint. In a memorandum filed in support of his motion, Pinson argued that Baiter failed to state a claim for which relief can be granted. Pinson contended that he could not be sued in his official capacity because he was not performing a proprietary function at the time of Bainter's injury. Bainter filed a response in which he observed that Pinson had not argued that he was entitled to judgment with respect to the claim against him in his individual capacity. General counsel for the Kentucky Department of Education made an entry of appearance on Pinson's behalf, and a period of discovery began.

On August 16, 2024, Pinson filed a motion for summary judgment. He argued that Bainter's claim against him in his official capacity was barred by government immunity principles. Additionally, Pinson argued that he was entitled to qualified official immunity with respect to Bainter's claim against him in his individual capacity. Pinson contended that his acts were discretionary in nature rather than ministerial and that he had performed them in good faith. Finally, Pinson argued that his alleged negligence was not the legal cause of Bainter's injury.

Bainter responded. In his memorandum to the court, Bainter argued that the parties' depositions and written discovery indicated that Pinson's

obligation to supervise students was a ministerial duty and that he was not entitled to claim qualified official immunity. Separately, Bainter contended that he could establish that Pinson's acts and omissions were the legal cause of his injury.

By its order entered on March 3, 2025, the Madison Circuit Court denied Pinson's motion for summary judgment. The court observed that the ordinary supervision of a student by a public-school teacher has routinely been viewed as a ministerial duty. It rejected Pinson's contention that supervising students' use of the welding classroom, workshop, and scrap materials stockpile required the exercise of a heightened degree of discretion. It also rejected Pinson's argument that taking a telephone call from his principal required him to use his own judgment to decide how to prioritize his obligations. Finally, the court rejected Pinson's argument that his acts or omissions were not the legal cause of Bainter's injury. This appeal relates only to the court's conclusion concerning Pinson's lack of immunity.

On appeal, Pinson argues that the Madison Circuit Court erred by concluding that his duty to supervise his students was ministerial in nature rather than discretionary. Pinson contends that the trial court failed to undertake the necessary fact-specific analysis required to determine whether his non-traditional classroom, including a workshop with dangerous equipment and a scrapyard, posed unique challenges concerning his supervision of students, consequently,

requiring him to exercise his discretion to determine what level of supervision was necessary. He contends that before any conclusion is reached concerning the nature of his obligation to supervise students, the trial court must undertake a detailed and specific examination of the extraordinary duties of a welding instructor. Pinson argues that the court's order denying summary judgment must be reversed because the court failed to undertake the required analysis. Bainter argues that Pinson's exercise of discretion in managing the welding class was superseded by an **absolute obligation** to supervise students as imposed by numerous statutes and school policies.

As the Kentucky Supreme Court explained in *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001), when sued in his individual capacity, an officer or employee of the state or county is often entitled to qualified official immunity. This immunity protects the defendant from liability for good faith judgment calls made in a legally uncertain environment. *Id.* The applicability of qualified immunity "rests not on the status or title of the officer or employee, but on the function performed." *Id.* at 521. Specifically, "the analysis depends upon classifying the particular acts or functions in question in one of two ways: discretionary or ministerial." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010).

Qualified official immunity does not protect one who negligently performs, or fails to perform, a ministerial duty. *Patton v. Bickford*, 529 S.W.3d

-5-

717, 724 (Ky. 2016). A duty is categorized as ministerial where the employee's duty is absolute, certain, and imperative. *Id.* In the public-school setting, the Kentucky Supreme Court has explained that a "special relationship" is formed between a Kentucky school district and students compelled to attend school such that there is "an affirmative duty on the district, its faculty, and its administrators to take all reasonable steps to prevent foreseeable harm to its students." *Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145, 148 (Ky. 2003) (citations omitted).

The Supreme Court of Kentucky has repeatedly held that "a teacher's duty to supervise students is ministerial, as it requires enforcement of known rules." *Marson v. Thomason*, 438 S.W.3d 292, 301 (Ky. 2014) (citations omitted). Kentucky Revised Statutes (KRS) 161.180(1) provides that each teacher and administrator in a public school must hold pupils to "a strict account for their conduct on school premises. . . ."

In his deposition, Pinson agreed that he was aware of his obligation to comply with rules and regulations promulgated by the Kentucky Board of Education and state boards of health relating to student safety. Pinson had been specifically advised that the "safety of students in an area technology center shall be the responsibility of the Principal and program teacher." He was directed repeatedly as follows: (1) "students are always to be supervised -- period. Monitor students at all times"; (2) "Never leave students unattended"; (3) "do not leave

students unattended and unsupervised"; and (4) "monitor students in class, labs, and hallways." He was clearly on notice that sending students out of the lab/classroom to perform hazardous tasks could be viewed as negligent. He was instructed not to leave the lab/classroom with an unqualified teacher in charge.

Generally, "actually supervising" students is "a ministerial duty for those who are assigned such supervision." *Ritchie v. Turner*, 559 S.W.3d 822, 832 (Ky. 2018). Where a teacher abdicates his duty to supervise his students, qualified official immunity is not a valid defense to a claim of negligent supervision.

As Bainter's welding teacher, Pinson was not empowered to promulgate policy. Instead, he was required to abide by policy established by others. He was not permitted to comply *substantially* with a safety policy within his discretion. Instead, the requirement to implement policy is "absolute, certain, and imperative." *Yanero,* 65 S.W.3d at 522.

Pinson argues that the welding class requires a unique degree of judgment and discretion – that supervision of students using equipment in the classroom "was preferred" and that "it was his own judgment that determined his course of action in not accompanying the students to the [scrap-yard]." However, the ministerial nature of the duty to supervise students is not vitiated where a public-school teacher must exercise some degree of decision-making with respect to the means or method to be employed in the performance of that duty.

"Recasting an otherwise ministerial duty as discretionary simply because it required some modicum of discretion of judgment 'would undermine the rule that an act can be ministerial even though it has a component of discretion.'" *Marson*, 438 S.W.3d at 302. "The need to use common sense and ordinary judgment to avoid negligence [does not] convert the task to a discretionary duty." *Patton*, 529 S.W.3d at 728.

Any potential liability that Pinson faces in this case arises from his assigned responsibilities, which included the ministerial duty to supervise students. Thus, he cannot claim the protection of qualified official immunity. That is not to say that Pinson is liable or does not have defenses; it simply means that he does not have qualified immunity from suit as a matter of law.

The order of the Madison Circuit is affirmed.


ALL CONCUR.


BRIEF FOR APPELLANT:

Corey M. Nichols
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Preston P. Cahill
Lexington, Kentucky